783 F.2d 1562
 James A. TERRELL, Plaintiff-Appellant, Cross-Appellee,
v.
UNITED STATES of America, Defendant-Appellee,
Bay County, Florida and City of Parker, Defendants,
Cross-Claimants/Cross- Appellees,
Florida Department of Transportation, Defendant,
Cross-Claimant/Appellee, Cross-Appellant,
and
BAY COUNTY, FLORIDA, Third-Party Plaintiff,
v.
CITY OF PARKER, Third-Party Defendant.
 No. 84-3705.
 United States Court of Appeals,
Eleventh Circuit.
 March 13, 1986.
 
 Patrick J. Faucheux, Panama City, Fla., for James A. Terrell.
 Linda G. Miklowitz, Tallahassee, Fla., for Florida Dept. of Transp.
 K.M. Moore, Asst. U.S. Atty., Tallahassee, Fla., for the U.S.
 D. Ross McCloy, Panama City, Fla., for Bay County, Fla.
 Benjamin Redding, Panama City, Fla., for City of Parker.
 Appeals from the United States District Court for the Northern District of Florida.
 Before GODBOLD, Chief Judge, KRAVITCH, Circuit Judge, and SIMPSON, Senior Circuit Judge.
 KRAVITCH, Circuit Judge:
 
 
 1
 This case presents an appeal and cross-appeals from a judgment awarding James Terrell $96,798 for personal injuries. Terrell sued the United States, the Florida Department of Transportation (DOT), Bay County, and the City of Parker. After a bench trial,[1] the court (1) held the DOT liable for Terrell's injuries, (2) set Terrell's comparative negligence at forty percent, (3) imposed no liability on the United States and (4) approved settlements between Terrell and Bay County and the City of Parker. The court rejected DOT's argument that suit against it was barred by the eleventh amendment. The court further found that Bay County and the City of Parker had no duty to indemnify the DOT.
 
 
 2
 The two issues we resolve on this appeal are (1) the DOT's eleventh amendment immunity claim and (2) Terrell's claim that the trial court erred by exempting the United States from liability.[2]
 
 I. BACKGROUND
 
 3
 On the evening of March 2, 1979, Terrell and two friends decided to go fishing on the old Dupont Bridge--a former highway bridge. There was a hole approximately five feet wide and six feet deep between the concrete bridge and the crumbling roadway to the bridge. Although Terrell saw the hole illuminated by the beam of his friend's flashlight, he mistook it for a patch of asphalt. Terrell stepped into the hole and was injured.
 
 
 4
 The accident site is owned by the United States. In 1941, the United States gave Florida a roadway easement for the then existing Dupont bridge and highway. In 1963, the United States granted Florida a second easement to enable the State to construct a new bridge adjacent to the old bridge. The accident site is within the boundaries of both easements. The 1963 easement explicitly provided that the DOT would maintain the roadway and that the United States would not be responsible for any injuries that occurred through the use of the easement.
 
 
 5
 After the new bridge was built, the center span of the old bridge was removed. The old bridge essentially became two fishing piers. In 1967, Florida quitclaimed to Bay County its interest in the old bridge and access roadway. Bay County agreed to maintain the old bridge and relieve the State of responsibility for the bridge.
 
 
 6
 In 1969, the United States created a new easement for the bridge and highway. This easement consolidated the 1941 and 1963 easements to the DOT. The consolidated easement encompasses the hole into which Terrell fell.
 
 
 7
 In 1976, the City of Parker leased the old bridge from Bay County. The terms of the lease stated that the city would maintain the old bridge and indemnify the county for any liability arising out of the use of the bridge.[3]
 
 
 8
 Prior to the accident, only minimal maintenance had been performed at the old bridge. The United States had erected a barrier to keep cars off the old bridge roadway and the DOT had repaired a washout. All of the defendants were aware of the hole at least six months before the accident; however they could not agree as to who was responsible for the repairs. After Terrell's accident, the United States filled in the hole. Subsequently, the DOT erected a guardrail on the site and filled in the hole when it reappeared.
 
 II. THE ELEVENTH AMENDMENT ISSUE
 
 9
 Terrell initially filed this suit in federal court and named the United States as a defendant. He subsequently filed an amended complaint that added the DOT, Bay County and the City of Parker as defendants.
 
 
 10
 The DOT argues that Florida has not consented to this suit in federal court; thus it claims immunity under the eleventh amendment. Florida Stat.Ann. Sec. 768.28(1) & (5) (West Supp.1985) waives sovereign immunity in tort actions. This statute was amended, however, after Terrell's suit was filed. The amendment, section 768.28(15), explicitly states that Florida does not waive its sovereign immunity from tort suits brought in federal courts.[4] Section 768.28(15) also states that Florida has never implicitly waived its sovereign immunity in federal fora. It is well settled that a waiver of sovereign immunity will not be readily implied or construed broadly. See Florida Department of Health and Rehabilitative Services v. Florida Nursing Home Ass'n., 450 U.S. 147, 150, 101 S.Ct. 1032, 1034, 67 L.Ed.2d 132 (1981) (Court will find a waiver "only where stated 'by the most express language or by such overwhelming implications from the text as [will] leave no room for any other reasonable construction.' ") (quoting Murray v. Wilson Distilling Co., 213 U.S. 151, 171, 29 S.Ct. 458, 464, 53 L.Ed. 742 (1909)); Edelman v. Jordan, 415 U.S. 651, 673, 94 S.Ct. 1347, 1361, 39 L.Ed.2d 662 (1974). As in Ford Motor Co. v. Department of Treasury, 323 U.S. 459, 467-69, 65 S.Ct. 347, 352-53, 89 L.Ed. 389 (1945), we may not presume that state officials are empowered to waive the state's immunity. See also Florida Nursing Home Ass'n., 450 U.S. at 149-50, 101 S.Ct. at 1033-34; cf. Arthur v. Florida Department of Transportation, 587 F.Supp. 974, 975 (S.D.Fla.1984) (Florida has not consented to suits against the DOT in federal fora). It is clear therefore that although Florida has waived its immunity from tort actions filed in state court, Florida has not waived its immunity from tort suits in federal fora.
 
 
 11
 Terrell argues that the eleventh amendment does not bar his suit for three reasons. First, he contends that the State explicitly consented to suit through its agent, the DOT. Terrell points out that the DOT filed a pretrial stipulation that the district court had jurisdiction. The DOT counters, however, that this stipulation was merely a pro forma document filed by a state officer not authorized to waive immunity and therefore does not bind the state. See Ford Motor Co. 323 U.S. at 466-69, 65 S.Ct. at, 351-53, 89 L.Ed. 389 (1945) (sovereign immunity cannot be waived by state officers in defending a lawsuit unless the officers are clearly authorized to effect such a waiver).
 
 
 12
 The pretrial stipulation, signed by all parties and filed on September 9, 1982, provided in relevant part:
 
 
 13
 I. Basis of Federal Jurisdiction.
 
 
 14
 This Court has jurisdiction over the United States of America based on the Federal Court [sic] Claims Act, 28 U.S.C. Sec. 1346(b). The Court has jurisdiction over the remaining Defendants based on the doctrine of pendent party jurisdiction.
 
 
 15
 Unlike other subject matter jurisdictional defects, eleventh amendment immunity can be waived. Such waivers, however, must be explicit. See Ford, supra. As will be discussed, infra, the United States Supreme Court has rejected the notion that pendent party jurisdiction enables federal courts to hear cases that would otherwise be barred by the eleventh amendment. Accordingly, we conclude that this pretrial stipulation did not waive the DOT's sovereign immunity claim.
 
 
 16
 Terrell next argues that pendent jurisdiction allows him to sue Florida in federal court. Under United Mineworkers v. Gibbs, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966), when a federal court obtains jurisdiction over a federal claim, it may adjudicate other related claims over which the court otherwise would not have jurisdiction. Pennhurst State School & Hospital v. Halderman, 465 U.S. 89, 104 S.Ct. 900, 917, 79 L.Ed.2d 67 (1984) (citing Gibbs ). There is no question here that the federal court properly has jurisdiction over Terrell's claim against the United States. There is also no question that Terrell's claim against the DOT arises from a "common nucleus of operative fact" that ordinarily would provide a sufficient basis for the federal courts to exercise pendent party jurisdiction over the DOT. See, e.g., Aldinger v. Howard, 427 U.S. 1, 14, 96 S.Ct. 2413, 2420, 49 L.Ed.2d 276 (1976) (citing Gibbs ). In Pennhurst, however, the Supreme Court explicitly held that "neither pendent jurisdiction nor any other basis of jurisdiction may override the Eleventh Amendment." 104 S.Ct. at 919. The Court explained that:
 
 
 17
 [P]endent jurisdiction is a judge-made doctrine of expediency and efficiency derived from the general Art. III language conferring power to hear all "cases" arising under federal law or between diverse parties. The Eleventh Amendment should not be construed to apply with less force to this implied form of jurisdiction than it does to the explicitly granted power to hear federal claims. The history of the adoption and development of the Amendment ... confirms that it is an independent limitation on all exercises of Art. III power: "the entire judicial power granted by the Constitution does not embrace authority to entertain suit brought by private parties against a State without consent given." If we were to hold otherwise, a federal court could award damages against a State on the basis of a pendent claim. Our decision in Edelman v. Jordan ... makes clear that pendent jurisdiction does not permit such an evasion of the immunity guaranteed by the Eleventh Amendment.
 
 
 18
 Pennhurst, 104 S.Ct. at 919 (citations omitted). Thus, although Terrell's claim against the DOT is pendent to his claim against the United States, the eleventh amendment bars his suit.
 
 
 19
 Terrell's final argument is that it is "patently unfair" to dismiss the DOT from this case because the DOT's stipulation recognizing the trial court's jurisdiction lulled Terrell "into a position of relying on the stipulation until the [state] statute of limitations governing this action had expired." Terrell's argument is compelling. Were it not for the eleventh amendment, the district court's conclusions that the DOT breached its duty to protect a public invitee from a known danger would be affirmed unless clearly erroneous. Nonetheless, the United States Supreme Court has firmly stated that the "considerations of judicial economy, convenience, and fairness to litigants" are policy considerations that "cannot override the constitutional limitation on the authority of the federal judiciary to adjudicate suits against a State." Pennhurst, 104 S.Ct. at 919-20.
 
 
 20
 In light of the above, we reverse the judgment against the DOT.
 
 III. THE LIABILITY OF THE UNITED STATES
 
 21
 The district court determined that the United States breached no duty of care owed to Terrell. Terrell argues that the United States should not be exempted from liability because it owned and controlled the property on which the injury occurred and knew of the dangerous condition.
 
 
 22
 The United States contends that it is exempt from liability for three reasons. First, the status of the United States as the owner of the property does not, absent negligence, impose liability on the United States. See Dalehite v. United States, 346 U.S. 15, 44-45, 73 S.Ct. 956, 972, 97 L.Ed. 1427 (1953). Second, the district court determined that the United States did not control the property surrounding the old bridge. This finding, as well as the conclusion that the United States was not negligent, must remain undisturbed unless clearly erroneous.
 
 
 23
 It is true that the hazard was on property that was part of the Tyndall Air Force Base owned by the United States. Even though the United States erected a barrier approximately fifty to sixty feet from the hole about six weeks prior to Terrell's accident, and graded the area near the bridge on several occasions, the district court concluded that "all the actions taken by the U.S.A. prior to the accident were limited to that area within Tyndall's own control, and did not extend closer to the bridge than the fifty to sixty feet at which the barrier was erected." The court further noted that the barrier erected by the United States was not negligently built and that there was no evidence to indicate that the United States' activities near the bridge proximately caused Terrell's accident. The district court further found that the conduct of the United States prior to the accident revealed a general recognition that "the old bridge was in the 'possession' and control of another party." Given that the United States had granted an easement to the DOT to construct the original bridge and that the DOT had transferred responsibility to maintain the old bridge to either Bay County or the City of Parker, we conclude that the determination that the United States was neither negligent nor in control of the property surrounding the old bridge is not clearly erroneous.
 
 
 24
 The United States further claims immunity from liability under the limitation on liability provisions of Florida's Outdoor Recreation and Conservation Act of 1963, Fla.Stat.Ann. Sec. 375.251 (West 1974). Section 375.251 exempts from tort liability landowners who gratuitously provide the public with outdoor recreational areas. The district court found that the statute did not apply here because the City of Parker and Bay County, not the United States, provided the old bridge as a recreational area. The United States argues that Kleer v. United States, 761 F.2d 1492 (11th Cir.1985) should control. In Kleer, we held that section 375.251 barred a suit brought against the United States by a plaintiff who was injured in a section of the Ocala National Forest that had not been developed for recreational use, but was nonetheless available to the public for recreation. Kleer, however, is inapplicable to this case. Kleer involved a recreational area provided by the United States. Here the United States provided neither the recreational fishing pier nor the approach to the pier. We therefore affirm the district court's rejection of the United States' claim that section 375.251 shields it from liability in this case.
 
 IV. CONCLUSION
 
 25
 We hold that Terrell's suit against the DOT is barred by the eleventh amendment; accordingly we reverse the district court's judgment against the DOT and vacate the award. We further hold that the district court's determination that the United States was neither negligent nor in control of the premises on which Terrell was injured was not clearly erroneous. Thus we affirm the judgment in favor of the United States.
 
 
 26
 AFFIRMED in part, REVERSED in part.
 
 
 
 [1]
 Two bench trials were held. At the first trial, the judge held the United States and the DOT liable for Terrell's injuries and approved settlements between Terrell and the remaining defendants. The DOT successfully moved for a new trial on the ground that, at the time of trial, the judge had been negotiating for employment with the firm that represented one of the parties
 
 
 [2]
 Our disposition of these two claims makes it unnecessary for us to address DOT's claims that it is not responsible for Terrell's injuries or, alternatively, it is entitled to indemnification from its codefendants. Moreover, we do not address the DOT's contention that Gerard v. Department of Transp., 455 So.2d 500 (Fla.Dist.Ct.App.1984), modified, 472 So.2d 1170 (Fla.1985) limits Terrell's recovery against the State
 
 
 [3]
 We note that Terrell never actually reached the bridge. He fell into the hole which spanned several feet between the bridge and the access road
 
 
 [4]
 That section provides:
 No provision of this section, or of any other section of the Florida Statutes, whether read separately or in conjunction with any other provision, shall be construed to waive the immunity of the state or any of its agencies from suit in federal court, as such immunity is guaranteed by the Eleventh Amendment to the Constitution of the United States, unless such waiver is explicitly and definitely stated to be a waiver of the immunity of the state and its agencies from suit in federal court. This subsection shall not be construed to mean that the state has at any time previously waived, by implication, its immunity, or that of any of its agencies, from suit in federal court through any statute in existence prior to June 24, 1984.