**In the Matter of MIDLAND MECHANICAL CONTRACTORS, INC., Debtor.**

**Richard D. ELLENBERG, as Trustee of Midland Mechanical Contractors, Inc., Plaintiff,**

**v.**

**BOARD OF REGENTS OF the UNIVERSITY SYSTEM OF GEORGIA, d/b/a Georgia State University, Defendant.**

Bankruptcy No. A93–62925–WHD.
Adversary No. 95–6067A.

United States Bankruptcy Court,
N.D. Georgia,
Atlanta Division.

Sept. 13, 1996.

454

Michael J. Bowers, Attorney General, George P. Shingler, Deputy Attorney General, Jeffrey Davis, Assistant Attorney General, Atlanta, GA, for Defendant.

Richard D. Ellenberg, Tamara Miles Ogier, Ellenberg & Associates, P.C., Atlanta, GA, for Plaintiff.

### *ORDER*

W. HOMER DRAKE, Jr., Bankruptcy Judge.

Currently before the Court is a Motion for Reconsideration by the Board of Regents of the University System of Georgia (hereinafter "the Board of Regents" or "the Board"). By this Motion, the Board seeks review of an Order dated April 17, 1996, wherein the Court refused to vacate a judgment previously entered against it in this proceeding. This matter gives rise to a core proceeding within the Court's jurisdiction, *see* 28 U.S.C. § 157(b)(2)(A) & (O), and it shall be disposed of in accordance with the following reasoning.

#### FACTUAL BACKGROUND

This adversary proceeding relates to a prepetition contract between the Board of Regents and Midland Mechanical Contractors, Inc. (hereinafter "the Debtor") for the installation of certain sprinkler systems in the Georgia State University complex. When the Debtor filed for bankruptcy protection without fully completing performance under that agreement, the Board of Regents filed a

Motion for Order Directing Debtor in Possession to Assume or Reject Contract. Protracted negotiations ensued and, after agreeing that the contract would be assumed, the parties presented a Consent Order to that effect for the Court's approval. On September 8, 1993, the Court signed this Consent Order Granting Motion for Order Directing Debtor in Possession to Assume Contract.

Soon afterwards, the parties reached an impasse regarding certain change order claims that had been submitted by the Debtor under their agreement. Negotiations having failed and the Board of Regents having continued to refuse all his demands for payment, on January 26, 1995, Richard D. Ellenberg (hereinafter "the Trustee") filed the present adversary proceeding in his capacity as Chapter 7 Trustee for the Debtor. The gravamen of the Trustee's complaint was simple—that the Board of Regents owed the Debtor a sum certain for change orders under the agreement, that this obligation had been breached, and that judgment should be entered accordingly.

As counsel for the Board of Regents, State Attorney General Michael J. Bowers (hereinafter "the Attorney General") filed an Answer contesting the Debtor's substantive right to payment under the contract and challenging the constitutionality of such a suit for damages against the State of Georgia. Through subsequent interrogatory responses, the Attorney General stated an intention to withdraw his second challenge relating to the Board of Regents Eleventh Amendment immunity from suit. The Attorney General never actually followed through with his promise of withdrawal, yet the parties appear to have thereafter treated the immunity question as a dead issue, focusing instead upon the Board of Regent's liability under the agreement.

The parties ultimately submitted this substantive question of liability for the Court's consideration through Cross Motions for Summary Judgment. After considering the factual circumstances of the case in light of applicable state law, the Court concluded that no material questions of fact existed, and it found the Trustee entitled to judgment as a matter of law. Consequently, through an Order dated January 11, 1996, the Court entered a judgment in this proceeding in favor of the Trustee and against the Board of Regents.

Some two months later, the Board of Regents filed a Rule 60(b) Motion for Relief from Final Judgment, submitting that circumstances of "excusable neglect" had prevented its counsel, the Attorney General, from either appealing the Court's January Order or seeking reconsideration thereof within the time period proscribed by Federal Rule. Thus, the Board of Regents asked that the Court vacate and re-enter the judgment against it in order to commence a new appeal period for its benefit. Finding that the Federal Rules did not contemplate such a substitution of judgments and that, in any event, the Board of Regents had not made any showing of "excusable neglect" warranting relief under Rule 60(b)(1), the Court denied this Motion through an Order dated April 16, 1996.

In the wake of that April 16th Order, the Board of Regents now has timely filed a Motion for Reconsideration, advancing therein a new and independent basis for its Rule 60(b) Motion for Relief from Judgment. In particular, the Board cites an intervening decision in *Seminole Tribe of Florida v. Florida*, — U.S. —, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996), to suggest that Bankruptcy Code section 106's abrogation of Eleventh Amendment immunity stems from an invalid exercise of Congress' Article I power. To the extent that section 106 has no force in view of the *Seminole* decision, the Board of Regents next submits that the Court could obtain jurisdiction over it only if Georgia somehow had waived its Eleventh Amendment protection in this proceeding. The Board of Regents further contends that no such waiver took place, and it consequently reasons that the judgment rendered herein must be set aside as void for want of jurisdiction under Federal Rule of Civil Procedure 60(b)(4). Having afforded both the Trustee and the Board of Regents substantial opportunity to brief these points of law, and having given the arguments produced thereby its careful consideration, the Court now turns its

attention to the procedural and substantive merits of the Board's Motion.

## DISCUSSION

### 1. The Procedural Appropriateness of Using the Eleventh Amendment to Justify Reviewing the Motion to Vacate at this Late Stage in the Proceedings

Before addressing the substance of the Eleventh Amendment challenge now advanced by the Board, the Court first must assess its procedural workability, i.e., it must be determined whether the *Seminole* decision and the Board's Motion relying thereon have come at a point too late in these proceedings to justify relief from the Court's prior judgment. Federal Rule of Civil Procedure 59(e) grants bankruptcy courts license to reconsider orders and judgments after their entry. *See* Fed.R.Civ.P. 59(e) (made applicable in bankruptcy by Fed. R.Bankr.P. 9023); *see also* Fed.R.Bankr.P. 9002 (references, like that of Federal Rule of Civil Procedure 59(e), to the alteration or amendment of a "judgment" shall be read to include reconsideration of any order appealable to an appellate court); *see also Nations-Bank v. Blier (In re Creative Goldsmiths)*, 178 B.R. 87, 90–91 (Bankr.D.Md.1995) (applying Rule 59(e) in bankruptcy). Understandably, however, the goal of this provision is limited to the correction of any manifest errors of law or misapprehension of fact. *See Hutchinson v. Staton*, 994 F.2d 1076, 1081 (4th Cir.1993); *Lux v. Spotswood Constr. Loans*, 176 B.R. 416, 420 (E.D.Va.), *aff'd*, 43 F.3d 1467 (4th Cir.1994).

> [This Rule is] not designed to furnish a vehicle by which a disappointed party may reargue matters already argued and disposed of, nor [is it] aimed at providing a mechanism by which new arguments or legal theories, which could and should have been raised prior to the issuance of judgment, can be later advanced.

*See In re DEF Inv., Inc.*, 186 B.R. 671, 680–81 (Bankr.D.Minn.1995) (citing *Bannister v. Armontrout*, 4 F.3d 1434, 1440 (8th Cir. 1993)); *see also Concordia College Corp. v. W.R. Grace*, 999 F.2d 326, 330 (8th Cir.1993), *cert. denied*, 510 U.S. 1093, 114 S.Ct. 926, 127 L.Ed.2d 218 (1994); *Dale & Selby Superette & Deli v. Dep't of Agric.*, 838 F.Supp. 1346, 1348 (D.Minn.1993); *DeGidio v. Pung*, 125 F.R.D. 503, 505 (D.Minn.1989); *Fed. Deposit Ins. Corp. v. World Univ., Inc.*, 978 F.2d 10, 16 (1st Cir.1992). Attempts to take a "second bite at the apple," to introduce new legal theories, or to pad the record for an appeal, constitute an abuse of the Rule 59(e) motion which the Court normally will not condone. *See id.* Thus, the Court will grant a Rule 59(e) motion only under extraordinary circumstances, such as a change in the law or the facts upon which it based its decision. *See Wilson v. Runyon*, 981 F.2d 987, 989 (8th Cir.1992), *cert. denied*, 508 U.S. 975, 113 S.Ct. 2968, 125 L.Ed.2d 668 (1993); *Dale & Selby*, 838 F.Supp. at 1347–48.

Here, the Trustee strenuously argues that the Board should not be permitted to add, through a Motion to Reconsider, a new theory for vacating the judgment at issue. Indeed, to the extent that the Board of Regents relied solely upon a theory of "excusable neglect" to justify its original Motion to Vacate, the Trustee appears to find this newly advanced Eleventh Amendment challenge wholly inappropriate for a subsequent Motion to Reconsider. As such, he contends, irrespective of that decision's impact upon the Court's original jurisdiction, the Board of Regents cannot now rely upon the *Seminole* holding as a foundation for its Motion to Reconsider.

In most cases, the Court would agree with the Trustee's assertion. Litigants should not be permitted to base a Motion to Reconsider upon some theory not argued within their original Motion to Vacate. *See Concordia College*, 999 F.2d at 330; *Dale & Selby Superette & Deli*, 838 F.Supp. at 1348; *In re DEF Inv., Inc.*, 186 B.R. at 680–81. Nevertheless, the instant case marks an exception to that general rule, since the "new theory" of Eleventh Amendment immunity now advanced by the Board of Regents strikes at the heart of the Court's own jurisdiction, and it, therefore, may be presented at any stage of the proceedings. *See Edelman v. Jordan*, 415 U.S. 651, 678, 94 S.Ct. 1347, 1362, 39 L.Ed.2d 662 (1974) (the Eleventh Amendment "sufficiently partakes of the nature of a jurisdictional bar" and consequently may be

raised at any time); *Pennhurst State School & Hosp. v. Halderman,* 465 U.S. 89, 98 n. 8, 104 S.Ct. 900, 907 n. 8, 79 L.Ed.2d 67 (1984) (the Eleventh Amendment "deprives the federal courts of any jurisdiction to entertain such claims, and thus may be raised at any point in a proceeding"); *Georgia Ass'n of Retarded Citizens v. McDaniel,* 855 F.2d 794, 800 n. 8 (11th Cir.1988) (as a jurisdictionally based matter, the Eleventh Amendment may be raised at any stage of the proceedings). As such, the Court finds the Board of Regent's Eleventh Amendment challenge to be appropriately presented, despite the complete lack of any such argument in the original Motion to Vacate.

## II. The Eleventh Amendment and its Governance of this Case in the Wake of Seminole

■ The Eleventh Amendment to the Constitution provides that, "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." This provision "bars suits which seek either damages or injunctive relief against a State, an 'arm of the State,' its instrumentalities, or its agencies," *Franceschi v. Schwartz,* 57 F.3d 828, 831 (9th Cir. 1995), and it consequently must be read as governing the instant litigation.[1] Thus, in order for the Trustee to bring a suit for damages against the Board of Regents, either the State of Georgia must have waived its right to Eleventh Amendment immunity or the United States Congress must have abrogated that immunity through a valid exercise of power.[2] *See generally Pennhurst State School & Hosp. v. Halderman,* 465 U.S. 89, 99, 104 S.Ct. 900, 907, 79 L.Ed.2d 67 (1984); *Metcalf & Eddy, Inc. v. Puerto Rico Aqueduct & Sewer Auth.,* 991 F.2d 935, 938 (1st Cir.1993); *Gamble v. Fla. Dept of Health & Rehab. Serv.,* 779 F.2d 1509, 1513 n. 5 (11th Cir.1986).

Prior to the Supreme Court's decision in *Seminole Tribe of Florida v. Florida,* ── U.S. ──, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996), the latter appeared to be the case. Code section 106 offered a clear statement of Congress' intent to abrogate state immunity within the bankruptcy context, and the amenability of the States to the present sort of litigation, therefore, seemed beyond contradiction. *See, e.g., In re Merchants Grain, Inc.,* 59 F.3d 630, 634–35 (7th Cir.1995); *Stern v. Commonwealth of Mass. Alcohol Beverage Control Comm'n (In re J.F.D. Enter.),* 183 B.R. 342, 354 (Bankr.D.Mass.1995); *Sparkman v. State of Fla. Dept. of Rev. (In re York–Hannover Developments),* 181 B.R. 271, 278 (Bankr.E.D.N.C.1995) (noting that "Congress made its intention to abrogate sovereign immunity 'unmistakably clear' in § 106" and finding such abrogative measures to fall within the plenary authority granted by the Constitution's Bankruptcy Clause).

■ The introduction of the *Seminole* decision, however, serves to alter dramatically the landscape of Eleventh Amendment jurisprudence as it relates to statutorily abrogative provisions, particularly Bankruptcy Code section 106. Under the *Seminole* rationale, Congress' power to abrogate immunity only may be exercised pursuant to section 5 of the

---

1. It appears without contest that the Board of Regents of the University System of Georgia properly qualifies as an "arm of the State" under governing standards, and that it consequently must be viewed as enjoying the same degree of Eleventh Amendment protection which would be afforded to the State itself in a suit for damages like the present one. *See Stewart v. Baldwin County Bd. of Educ.,* 908 F.2d 1499, 1509 (11th Cir.1990) (advancing a three-part test for determining whether an entity qualifies as an "arm of the State or agency thereof"). As such, the Eleventh Amendment will act to divest the Court of jurisdiction in this matter unless some exception to its litigation bar should happen to apply. *See Florida Nursing Home Ass'n v. Page,* 616 F.2d 1355, 1362–63 (5th Cir.1980).

2. An abrogation of Eleventh Amendment immunity will not be found effective unless it meets a two-part test set forth by the Supreme Court. First, Congress must have made its intent to abrogate Eleventh Amendment immunity "unmistakably clear." *Pennsylvania v. Union Gas Co.,* 491 U.S. 1, 7, 109 S.Ct. 2273, 2277, 105 L.Ed.2d 1 (1989) (quoting *Atascadero State Hosp. v. Scanlon,* 473 U.S. 234, 242, 105 S.Ct. 3142, 3146, 87 L.Ed.2d 171 (1985)). Second, the constitutional provision under which Congress legislates its purported abrogation must generate the power to override the Eleventh Amendment. *Union Gas,* 491 U.S. at 13–23, 109 S.Ct. at 2280–2286.

Fourteenth Amendment, and provisions of abrogation that are based upon Article I of the Constitution, such as Bankruptcy Code section 106,[3] consequently do nothing to diminish the protection that each of the States enjoys under the Eleventh Amendment. *Seminole,* —— U.S. at —— - ——, 116 S.Ct. at 1125–32. Stated more succinctly, the avoidance of Eleventh Amendment immunity found within Code section 106 has no validity in the wake of *Seminole* because it relies upon a nonexistent Article I power of abrogation for its generative impetus. *See Light v. State Bar of California,* 1996 WL 341112, No. 94–16995 at *2, 87 F.3d 1320 (9th Cir. June 20, 1996) (*Seminole* "forecloses any argument that § 106 of the Bankruptcy Code abrogates the States' sovereign immunity"); *In re Martinez,* 196 B.R. 225, 229–30 (D.P.R. 1996); *Sacred Heart Hosp. of Norristown v. Commonwealth of Penn. Dept. of Welfare (In re Sacred Heart Hosp. of Norristown),* 199 B.R. 129, 134 (Bankr.E.D.Pa.1996).

■ That said, the only means by which the Court could hold jurisdiction over the Board of Regents in this proceeding would be through some act of waiver. *Pennhurst,* 465 U.S. at 99, 104 S.Ct. at 907; *Metcalf & Eddy,* 991 F.2d at 938. Waivers of Eleventh Amendment immunity, however, fall subject to the most stringent of examinations. *See Atascadero State Hosp. v. Scanlon,* 473 U.S. 234, 241, 105 S.Ct. 3142, 3146, 87 L.Ed.2d 171 (1985). Where, as here, the legislature of a

State has not formally relinquished Eleventh Amendment immunity,[4] yet the State's Attorney General is said to have consented to such a waiver, the State's sovereign immunity remains intact unless the Legislature clearly has delegated its power to waive immunity to the Attorney General at his discretion. *See Ford Motor Co. v. Dept. of Treasury,* 323 U.S. 459, 467, 65 S.Ct. 347, 351, 89 L.Ed. 389 (1945); *Silver v. Baggiano,* 804 F.2d 1211, 1214 (11th Cir.1986) (Attorney General's removal of suit to federal court did not result in waiver of immunity because neither state statute nor constitution vested him with power to consent in waiver); *Terrell v. United States,* 783 F.2d 1562, 1565 (11th Cir.1986) (pre-trial stipulation to the validity of a federal court's jurisdiction by unauthorized State official found ineffective as a waiver of immunity); *Freimanis v. Sea–Land Serv., Inc.,* 654 F.2d 1155, 1160 (5th Cir.1981) (entry of a consent judgment will not effect a release of Eleventh Amendment immunity unless the State has given the Attorney General power to waive immunity on its behalf). As a matter of longstanding practice, the State of Georgia has chosen not to place any immunity-waving power in the hands of its Attorney General. *See Georgia R.R. & Banking Co. v. Redwine,* 85 F.Supp. 749, 751 (N.D.Ga.1949) (discussing the Attorney General of Georgia's lack of power to waive sovereign immunity); *see also* GA. CONST. art. I, sec. II, par. IX (declaring that sovereign immunity "can only be waived by an Act of

3. In *Seminole,* the Supreme Court found itself faced with an attempt by Congress to abrogate Eleventh Amendment immunity pursuant to the Indian Commerce Clause. *See* U.S. CONST. art. I, sec. 8, cl. 3. Through a holding with ramifications extending far beyond the matter of Indian commerce then before it, the *Seminole* Court reasoned that "the Eleventh Amendment restricts the judicial power under Article III, and Article I cannot be used to circumvent the constitutional limitations placed upon federal jurisdiction." *Seminole,* —— U.S. at —— - ——, 116 S.Ct. at 1131–32. Contemporaneous with that decision, the Supreme Court remanded *Ohio Agr. Commodity Depositors Fund v. Mahern,* —— U.S. ——, 116 S.Ct. 1411, 134 L.Ed.2d 537 (1996), a companion case challenging the constitutionality of Bankruptcy Code section 106, for reconsideration in view of *Seminole.*

4. In this respect, one must distinguish between a general waiver of sovereign immunity by the State and a release of Eleventh Amendment immunity. Granted, through its constitution, the State of Georgia has waived sovereign immunity for *ex contractu* actions like the present one. *See* GA. CONST., art. I, sec. II, par. IX (amended 1991). This waiver, however, merely would permit the Trustee to sue the Board of Regents in an applicable Georgia forum; it would not give rise to waiver of Eleventh Amendment so as to allow litigation in federal court. *Compare International Business Machines Corp. v. Evans,* 265 Ga. 215, 216 (1995); *Department of Transp. v. APAC–Georgia, Inc.,* 217 Ga.App. 103, 105 (1995) (permitting contract suits against the State in view of its sovereign immunity waiver), *with Florida Dept. of Health & Rehab. Servs. v. Florida Nursing Home Ass'n,* 450 U.S. 147, 150, 101 S.Ct. 1032, 1034, 67 L.Ed.2d 132 (1981); *Schopler v. Bliss,* 903 F.2d 1373, 1379 (11th Cir.1990) ("[e]vidence that a State has waived sovereign immunity in its own courts is not by itself sufficient to establish waiver of Eleventh Amendment immunity from suit in federal court").

the General Assembly which specifically provides that sovereign immunity is thereby waived and the extent of such waiver") (amended 1991). Thus, notwithstanding the extent to which his promising the withdrawal of such a defense might equate with its concession,[5] the Attorney General's conduct in this proceeding did not result in a waiver of Eleventh Amendment immunity. *Ford Motor,* 323 U.S. at 467, 65 S.Ct. at 351; *Silver,* 804 F.2d at 1214. There being no waiver of immunity from the State and no valid abrogation by Congress, the Court lacks jurisdiction over the Board of Regents in this matter, and the judgment previously entered herein is void. *See Carimi v. Royal Carribean Cruise Line, Inc.,* 959 F.2d 1344, 1345 (5th Cir.1992); *King Fisher Marine Serv. v. 21st Phoenix Corp.,* 893 F.2d 1155, 1158 (10th Cir.1990); *Bally Export Corp. v. Balicar, Ltd.,* 804 F.2d 398, 400 (7th Cir.1986) (upon determining that the underlying judgment is void due to insufficient personal or subject matter jurisdiction, "the trial judge has no discretion and must grant the appropriate 60(b) relief"). The Board of Regent's Motion to Reconsider its earlier Motion to Vacate Judgment consequently shall be granted.[6]

## CONCLUSION

The Court having given the matter its careful attention and having thereby found the Eleventh Amendment of the United States Constitution to divest it of jurisdiction in this proceeding, it is **ORDERED** that the Motion for Reconsideration by the Board of Regents of the University System of Georgia is **GRANTED**. The Judgment and amendment thereto, respectively entered by the Court on January 11, and 31, 1996, are **VACATED** and this action is **DISMISSED** for want of jurisdiction over the defendant, Board of Regents of the University System of Georgia.

**IT IS SO ORDERED.**

---

**5.** As an aside, however, the Court observes that the Attorney General's conduct in this matter most likely would not give rise to a binding act of waiver. As previously noted, a relinquishment of Eleventh Amendment immunity must be "unequivocal" in order for the Court to give it any effect. *See Atascadero,* 473 U.S. at 241, 105 S.Ct. at 3146; *Ford Motor Co.,* 323 U.S. at 466–67, 65 S.Ct. at 351–352. Here, rather than decisively releasing the Board's sovereign immunity defense, the Attorney General merely stated an intention to do so. In all likelihood, neither this equivocal promise nor his subsequent failure to pursue the defense would suffice to create a waiver under applicable case law. *See e.g., Amisub (PSL) v. State of Colorado DSS,* 879 F.2d 789, 793 (10th Cir.1989) (citing *Clallam County v. Dept. of Transp. of the State of Washington,* 849 F.2d 424, 426–27 (9th Cir.1988), *cert. denied,* 488 U.S. 1008, 109 S.Ct. 790, 102 L.Ed.2d 782 (1989)).

**6.** The result dictated in this proceeding substantially contradicts the Court's own notion of fair play and equity. Through this course of events, the estate has incurred substantial litigation expenses and much time has been devoted to the resolution of this controversy. Now, only after receiving a judgment adverse to its interests, the Board has chosen to reassert its Eleventh Amendment immunity to avoid that judgment's consequences. As the Fifth Circuit noted when faced with similar facts, however,

> The State has asserted its immunity only after it sought a favorable verdict and lost before the jury. Had it prevailed, Louisiana would doubtless be claiming the case was tried with its consent. That today's decision might permit such an inequity cannot overcome Louisiana's plain constitutional right in the absence of clearly expressed Louisiana law to the contrary.

*Dagnall v. Gegenheimer,* 645 F.2d 2, 4 (5th Cir. 1981). Like the court in *Dagnall,* this Court finds that its sense of fairness must give way to a binding interpretation of those rights held by the State under the United States Constitution.