327 B.R. 175 (2005)
In re ADELPHIA COMMUNICATIONS CORP., et al., Debtors.
No. 02-41729 (REG).
United States Bankruptcy Court, S.D. New York.
June 13, 2005.
*176 Willkie Farr & Gallagher LLP, by Marc Abrams, Esq. (argued), Paul V. Shalhoub, Esq., Brian E. O'Connor, Esq., Terence K. McLaughlin, Esq., Rachel C. Strickland, Esq., Morris J. Massel, Esq., Jamie M. Ketten, Esq., New York, NY, Boies, Schiller & Flexner LLP by Philip C. Korologos, Esq. (argued), George Carpinello, Esq., Eric Brenner, Esq., Armonk, NY, Covington & Burling by Alan Vinegrad, Esq., New York, NY, Foley & Lardner LLP, by Gregory S. Bruch, Esq., Washington, D.C., for Debtors and Debtors in Possession.
David N. Kelley, United States Attorney, by Richard D. Owens, Assistant United States Attorney, Christopher J. Clark, Assistant United States Attorney (argued), Judd C. Lawler, Assistant United States Attorney, New York, NY.
Dilworth Paxson LLP, by Lawrence G. McMichael, Esq. (argued), Martin J. Weis, Esq., Philadelphia, PA, Brown Raysman Millstein Felder & Steiner LLP, by Gerard S. Catalanello, Esq., Shannon R. Wing, Esq., New York, NY, for the Rigases.
Kasowitz, Benson, Torres & Friedman LLP, by David M. Friedman, Esq. (argued), Adam L. Shiff, Esq., Jonathan E. Minsker, Esq., New York, NY, for the Official Committee of Unsecured Creditors.
Bragar Wexler Eagel & Morgenstern, P.C., by Peter D. Morgenstern, Esq. (argued), Gregory A. Blue, Esq., Eric B. Fisher, Esq., Andrew Buck, Esq., New York, NY, for the Official Committee of Equity Security Holders.
Hennigan, Bennett & Dorman LLP, by Bruce Bennett, Esq. (argued), James O. Johnston, Esq., Los Angeles, CA, by A. Brent Truitt, Esq., New York, NY, for the Ad Hoc Committee of ACC Senior Noteholders.
Seward & Kissel LLP, by Arlene R. Alves, Esq., New York, NY, for Law Debenture *177 Trust Company of New York, as ACC Senior Notes Trustee.
Brown Rudnick Berlack Israels LLP, by Edward S. Weisfelner, Esq., New York, NY, by Steven D. Pohl, Esq. (argued), Boston, MA, for the Ad Hoc Adelphia Trade Claims Committee.
White & Case LLP, by J. Christopher Shore, Esq. (argued), Douglas P. Baumstein, Esq., New York, NY, by Thomas E. Lauria, Esq., John K. Cunningham, Esq., Gerard Uzzi, Esq., Miami, FL, for the Ad Hoc Committee of Arahova Noteholders.
Andrews Kurth LLP, by Peter S. Goodman, Esq. (argued), Justin R. Wyatt, Esq., New York, NY, by Hugh M. Ray, Esq., Houston, TX, for the Ad Hoc Committee of Senior Preferred Shareholders.
Fried Frank Harris Shriver & Jacobson LLP, by Gregg L. Weiner, Esq., Gary Kaplan, Esq. (argued), Craig M. Price, Esq., New York, NY, for W.R. Huff Asset Management Co., L.L.C.
Sheppard Mullin Richter & Hampton LLP, by David McCarty, Esq., Los Angeles, CA, for U.S. Bank National Association, as Indenture Trustee in Respect of the Arahova Notes and the FrontierVision Notes.
Chapman and Cutler LLP, by James E. Spiotto, Esq., Ann Acker, Esq., Chicago, IL, for the Certain FrontierVision Noteholders.
Emmet, Marvin & Martin, LLP, by Edward P. Zujkowski, Esq., Martin Eisenberg, Esq., New York, NY, for The Bank of New York, as Indenture Trustee.
Haynes and Boone, LLP, by Judith Elkin, Esq., Glenn M. Kurtz, Esq., Karen M. Asner, Esq., New York, NY, by Thomas E. Kurth, Esq., Robin E. Phelan, Esq. (argued), Richard Anigian, Esq., Dallas, TX, for Bank of America, N.A.
Mayer, Brown, Rowe & Maw LLP, by J. Robert Stoll, Esq., Robert J. Ward, Esq., Kenneth E. Noble, Esq. (argued), New York, NY, for Bank of Montreal, as Administrative Agent for the Olympus Lenders.
Simpson Thacher & Bartlett LLP, by Peter Pantaleo, Esq. (argued), William T. Russell, Jr., Esq. (argued), New York, NY, for Wachovia Bank, N.A., as Administrative Agent for the UCA Lenders.
Milbank, Tweed, Hadley & McCloy LLP, by Luc A. Despins, Esq., New York, NY, for Citibank, N.A., as Administrative Agent for the Century-TCI Lenders.
Milbank, Tweed, Hadley & McCloy LLP, by James C. Tecce, Esq., New York, NY, for JPMorgan Chase Bank, as Administrative Agent for the FrontierVision Lenders.
Luskin, Stern & Eisler LLP, by Michael Luskin, Esq., Trevor Hoffmann, Esq., New York, NY, for The Bank of Nova Scotia.
Cleary Gottlieb Steen & Hamilton LLP, by Mitchell A. Lowenthal, Esq. (argued), New York, NY, for 13 Investment Banks.
Chadbourne & Parke LLP, by Andrew P. Brozman, Esq., New York, NY, for Credit Lyonnais New York Branch, Credit Lyonnais Securities (USA) Inc., and LCM I Limited Partnership.
Ballard Spahr Andrews & Ingersoll, LLP, by William Slaughter, Esq. (argued), Philadelphia, PA, for Comcast.
Morgan, Lewis & Bockius LLP, by Richard S. Toder, Esq. (argued), Neil E. Herman, Esq., New York, NY, for Century/ML Cable Venture.
Proskauer Rose LLP, by Bradley I. Ruskin, Esq. (argued), Jeffrey Levitan, Esq., Scott A. Eggers, Esq., Karen Coombs, Esq., New York, NY, for ML Media Partners, L.P.
*178 Angel & Frankel, P.C., by Joshua J. Angel, Esq., Laurence May, Esq. (argued), John H. Drucker, Esq. (argued), Leonard H. Gerson, Esq., Kirby McInerney & Squire LLP, by Richard L. Stone, Esq., Mark A. Strauss, Esq., Abbey Gardy, LLP, by Arthur N. Abbey, Esq., Judith L. Spanier, Esq., Stephen T. Rodd, Esq., Richard B. Margolies, Esq., New York, NY, for Consolidated Class Action Plaintiffs.
Rutan & Tucker, LLP, by William M. Marticorena, Esq., Costa Mesa, CA, for the County of San Diego, California.
Miller & Van Eaton, LLP, by Kenneth A. Brunetti, Esq., San Francisco, CA, by William Malone, Esq., Washington, D.C., for the City of Carlsbad, California.
DECISION ON MOTION FOR RECONSIDERATION OF ORDER APPROVING SETTLEMENT AGREEMENTS
ROBERT E. GERBER, Bankruptcy Judge.
The Creditors' Committee, joined by certain unsecured creditors, moves, pursuant to Fed.R.Civ.P. 59 and 60(b), as made applicable to bankruptcy cases under Fed. R. Bankr.P. 2923 and 9024, for reconsideration of this Court's order approving the Debtors' settlement with the DoJ, SEC, and the Rigases, based on developments since this Court issued its May 20 decision. Reconsideration is granted, but the Court's earlier decision is adhered to.

I.
The parties debate, as a threshold matter, whether this Court has jurisdiction to consider the Creditors' Committee's motion, as the Creditors' Committee had already appealed from the order that is the subject of this motion. The Creditors' Committee contends that the Court does have jurisdiction, and the Court agrees. Here relief was sought under Bankruptcy Rule 9023 and 9024, within 10 days of the order that had been appealed from. Under such circumstances, this Court is comfortable that under Fed. R. Bankr.P. 8002(b), which was amended in 1994 to conform to 1993 amendments to Rule 4(a)(4) of the Federal Rules of Appellate Procedure,[1] and caselaw determined after the 1993 amendments to FRAP 4(a)(4),[2] the Court does have jurisdiction.[3]
*179 Then, though the Court has considerable doubt as to whether reconsideration is appropriate under Fed. R. Bankr.P. 9024 and Fed.R.Civ.P. 60(b), it may plausibly be argued that the May 31 issuance by the United States Supreme Court of its decision in Arthur Andersen LLP v. United States,[4] and statements by the DoJ in its June 3 argument before the Second Circuit  both after the issuance of this Courts May 20 decision  provide a reasonable basis for assertions that they give rise to a "change in the law or the facts" upon which this Court made its decision, which has been held under at least some of the law construing Fed. R. Bankr.P. 9023 and Fed.R.Civ.P. 59(a) to be a satisfactory basis for reconsideration.[5] The Court assumes, without deciding, that these contentions are sufficient to permit consideration of their merits.

II.
However, upon reexamining its decision in light of the matter the Creditors' Committee proffers, the Court sees nothing to cause it to conclude that it made a "clear error of law,"[6] or that there was a change in the controlling law, or that the facts have materially changed.
Changes in the Controlling Law
Plainly there has been no change in the controlling law with respect to the standards to be applied by a bankruptcy court in determining whether or not to approve a settlement. Nor did the issuance of Arthur Andersen result in a material change  assuming there was any change at all  in the law that would have been taken into account by the Debtors in deciding whether or not to settle, or by the Court in deciding whether the Debtors' settlement was in the best interests of the estate.
While Arthur Andersen had not come down when this Court's May 20 decision approving the settlement was issued, this Court did not then rule as it did based on an expectation that Arthur Andersen's conviction would stand. Indeed, widely disseminated reports of the April oral argument at the Supreme Court had led this Court then to suspect that a reversal by the Supreme Court of Arthur Andersen's conviction was likely. This Court's May 20 decision was based not on the likelihood that Adelphia would be convicted if indicted, but rather on the damage that an indictment itself would inflict, even with a subsequent acquittal. Even an indictment would result in grave damage to the company, and (among many other things) material risk to Adelphia's now-pending sale to Time-Warner and Comcast, and risk the loss of DIP financing.[7]
*180 Nor does language in Arthur Andersen  including, without limitation, on page 2134 of the slip opinion, to which the Creditors' Committee cites  require this Court to rule in a way different than it did. Arthur Andersen was in essence a case about defective jury instructions[8]  most significantly, as to the requisite mens rea of the people who acted on the defendant company's behalf.[9] At this point there is little reason to believe, after the John and Timothy Rigas guilty verdicts, that the Government would have similar problems in that regard. Arthur Andersen does not speak to the fairness or unfairness of convicting a corporation based on the acts of the live people who are a company's agents. Nothing in Arthur Andersen takes away the Government's right to indict, or ability to convict, corporations in cases where the live people acting on those corporations' behalf act with the requisite mens rea  a matter that was deficient in Arthur Andersen, but that might not be deficient in another case.
Thus the Court is constrained to disagree with the Creditors' Committee's broad statement, citing to page 2134 of the slip opinion, that Arthur Andersen "makes clear that a company may not be convicted where the wrongdoing is not intentional and pervasive, and that the acts of a few cannot be imputed to a corporation that otherwise lacks criminal intent."[10]Arthur Andersen makes clear that wrongdoing must be intentional, but that is as far as it goes. The portion beyond that may be what the law already is, and may be what the law should be, but it is not what Arthur Andersen announced, on page 2134 or otherwise.
New Facts
Nor can the Court agree that the facts have materially changed since this Court's May 20 decision, by reason of statements by the Government at its June 3 argument before the Second Circuit.
With a significant caveat,[11] the Court is inclined to agree with the Creditors' Committee's suggestion that when addressing the Second Circuit, the Government acknowledged weaknesses as to its forfeiture claims that Government negotiators did not acknowledge when negotiating with Adelphia representatives. And given its statements to the Circuit, it is likely that when the Government stated to Adelphia's Dean Kronman and others on Adelphia's negotiating team, with little in the way of *181 qualifications or reservations,[12] "we will prevail,"[13] the Government was stating its likelihood of success with materially greater assurance than it privately believed.
But these points ultimately are immaterial. In approving the settlement, this Court did not rely on the Government's self-serving statements to Adelphia as to the Government's likelihood of success. Puffery as to the strength of one's litigation position in settlement negotiations is not unheard of, and those on the receiving end of others' litigation predictions tend not to automatically take them at face value. In approving the settlement, this Court did not assume that the Government necessarily would prevail in its forfeiture claims (nor did Adelphia or anyone else argue that this Court should), even with respect to forfeiture claims that might relate to property beneficially owned by soon to be sentenced John and Timothy Rigas. Rather, as stated in its decision, this Court found that there were risks that the Government might prevail;[14] there were risks as to Adelphia's ability to prevail on its own constructive trust claims, particularly with respect to interests in Rigas Family Entities held by persons other than John, Timothy, Michael and James Rigas (which Adelphia likely would need to do to trump Government forfeiture rights);[15] and risks as to Adelphia's ability to prevail on constructive trust claims quickly on summary judgment, as contrasted to prevailing only on damages claims, and only after an ultimate trial.[16] The assessments by Adelphia's Board, and by the Court, of the risks to Adelphia with respect to forfeiture trump the assessments by the Government (as articulated to anyone or as privately held) with respect to the potential outcome as to that issue.
Finally, but significantly, the risks with respect to the forfeiture of the Rigas Family *182 entities were but one factor in the Court's consideration of the totality of factors considered by the Court in approving the settlement. They were neither the overriding factor nor the factor that tipped the scales in an otherwise close balance.
The decision is adhered to.
SO ORDERED.
NOTES
[1] See Advisory Comm. Note to 1994 Amendment to Fed. R. Bankr.P. 8002 ("This rule as amended provides that a notice of appeal filed before the disposition of a specified postjudgment motion will become effective upon disposition of the motion. A notice filed before the filing of one of the specified motions... is, in effect, suspended until the motion is disposed of....").
[2] See Stone v. INS, 514 U.S. 386, 396, 115 S.Ct. 1537, 131 L.Ed.2d 465 (1995) ("[T]he filing of a Rule 59 motion to alter or amend a district court's judgment strips the appellate court of jurisdiction, whether the Federal Rule of Civil Procedure 59 motion is filed before or after the notice of appeal.") (emphasis added); Jones v. O'Keefe, 2000 WL 1804153 (S.D.N.Y. Dec.7, 2000) (Casey, J.) at *2 (court retained jurisdiction to decide a Rule 59(e) motion even though a notice of appeal from the same order had been filed the day before); Woodard v. Hardenfelder, 845 F.Supp. 960, 965 (E.D.N.Y.1994) (Glasser, J.) (noting change in FRAP 4(a)(4) to avoid trap for the unwary, and to provide that a notice of appeal filed before the filing of one of the specified motions  including Fed.R.Civ.P. 59 and 60  "is, in effect, suspended until the motion is disposed of, whereupon, the previously filed notice effectively places jurisdiction in the court of appeals.").
[3] Accordingly, the Court does not have to consider the possible alternative ground, applied in cases in the Second Circuit involving 60(b) motions made outside the 10-day window where FRAP 4(a)(4) and Fed. R. Bankr.P. 9002(b) would provide protection, that could also justify jurisdiction given the outcome of this determination  that the lower court has jurisdiction to deny a motion for reconsideration, even though it would need leave from the appellate court to grant it. See Toliver v. County of Sullivan, 957 F.2d 47 (2d Cir.1992); Travelers Casualty & Surety Co. v. Crow & Sutton Assocs., 228 F.R.D. 125, 127 (N.D.N.Y.2005) (Sharpe, J.) ("[A] rule 60(b) motion can be made even though an appeal has been taken and is pending.... In the Second Circuit, a district court can either entertain and deny the rule 60(b) motion without the circuit court's permission, or grant a rule 60(b) motion after an appeal is taken ... if the moving party obtains permission from the circuit court.") (internal quotation marks and citations omitted; quoting, inter alia, Toliver).
[4] ___ U.S. ___, 125 S.Ct. 2129, ___ L.Ed.2d ___ (2005) ("Arthur Andersen").
[5] See In re Midland Mechanical Contractors, Inc., 200 B.R. 453, 456 (Bankr.N.D.Ga.1996) (Drake, J.) (articulating the standard in that fashion).
[6] See Tallo v. Gianopoulos, 321 B.R. 23, 27 (E.D.N.Y.2005) (Sifton, J.).
[7] See In re Adelphia Communications Corp., 327 B.R. 143, 160-61, 2005 WL 1212601 (Bankr.S.D.N.Y. May 20, 2005) ("Decision") at *15.
[8] See, e.g., Arthur Andersen slip opinion at 2135 ("[T]he jury instructions here were flawed in important respects.").
[9] See Arthur Anderson slip opinion at 2134 (in two places). See also id. at 2134 ("Only persons conscious of wrongdoing can be said to `knowingly ... corruptly persuad[e].'") (brackets in original); id. ("[T]he jury instructions at issue simply failed to convey the requisite consciousness of wrongdoing.").
[10] Motion at 8.
[11] The Court notes that caveat because the Government properly observes that the Creditors' Committee did not quote the highly relevant comments that Judge Sotomayor expressed at page 17 of the argument transcript, and did not quote the questions by Judge Sotomayor (at pages 43-44 of the transcript) to which the Government was responding when the Government was quoted at pages 44-46 of the transcript. And the Government's response, fairly read in full context, probably should be regarded as based in material part on its recognition of (1) the apparent strength of the banks' position with respect to their liens on the Rigas Family Entities, and (2) difficulties in securing forfeiture of the interests held by non-convicted Rigases in Rigas Family Entities  both of which would cause problems for the Government, but which would not necessarily ensure to Adelphia's benefit.
[12] The Court does note that the Government also stated that "we will stretch it out until the end of time if necessary," implying a recognition that the Government might not prevail in earlier stages of any litigation.
[13] See Motion at 7-8, n. 3.
[14] See Decision at 153, 2005 WL 1212601, at *7 (finding reasonable Board's conclusions, after having been informed that Adelphia had arguments it could make against forfeiture, that Adelphia's prospects of prevailing were uncertain at best, and that there was "a very real risk" that Adelphia's arguments would be unavailing); id. at 160, 2005 WL 1212601, at *14 (settlements would ensure that the Debtors' estates would include hundreds of millions of dollars of Forfeited Managed Entities, "title to which otherwise might only be obtainable by winning hard fought litigation against the Rigases and defeating competing claims to these assets by, for example, the Government and creditors of the Rigas Family").
[15] See id. at 162, 2005 WL 1212601, at *17 ("But whether Adelphia could win quickly, such as on its motion for summary judgment, and on its constructive trust claim, which is simultaneously more important to prevail on and difficult to show, is a closer question."); id. at 168, 2005 WL 1212601, at *22 ("And success on Adelphia's part on the constructive trust claim would be of considerable importance, because if Adelphia merely secured a money judgment against the Rigases, that might well not trump the DoJ's property interest in forfeited property."). See also n. 16 below.
[16] See id. at 168, 2005 WL 1212601, at *22 ("I regard it as likely  strongly likely  that Adelphia would ultimately prevail over the Rigases on Adelphia's common law claims, especially those for breach of fiduciary duty. But whether Adelphia could prevail quickly, on summary judgment, and especially on its constructive trust claim, is much more debatable, by reason of the heavy burdens in this and every other Circuit to obtain victory on summary judgment; by reason of the demanding requirements for the imposition of a constructive trust; and because of the difficulty of securing summary judgment against each of the persons or entities who had an interest in the Forfeited Assets, and not just John, Timothy and even Michael and James Rigas.") (emphasis in original).