United States Court of Appeals,

Fifth Circuit.

No. 92-1363.

SECURITIES & EXCHANGE COMMISSION, Plaintiff-Appellee-Cross-Appellant,

v.

Maxwell C. HUFFMAN, Jr., et al., Defendants,

Maxwell C. Huffman, Jr., James T. Henry and John T. Forsberg, Defendants-Cross-Appellees,

and

James F. Stewart, Defendant-Appellant-Cross-Appellee.

Aug. 2, 1993.

Appeals from the United States District Court for the Northern District of Texas.

Before POLITZ, Chief Judge, GOLDBERG, and JONES, Circuit Judges.

EDITH H. JONES, Circuit Judge:

This case calls on us to decide whether an order of disgorgement fashioned at the behest of the SEC is a "debt" under the Federal Debt Collection Procedures Act of 1990 ("Debt Act"), 28 U.S.C. § 3001 et. seq. If so, its repayment is subject to state property law exemptions incorporated in the Debt Act. We hold that an order of disgorgement is not a "debt" as contemplated in the Debt Act. Since the district court concluded otherwise, its order of disgorgement must be reversed and remanded for a reconsideration of the amounts the defendants must pay.

I

In September 1990, the Securities and Exchange Commission filed civil suit against defendants Maxwell C. Huffman, Jr., James F. Stewart, James T. Henry, John J. Forsberg, and twenty-seven corporate defendants they controlled, alleging misuse of investor funds and fraudulent financial statements in connection with securities offerings in violation of several provisions of the securities laws. Without conceding liability,[1] the individual defendants consented to permanent

---

[1] Despite the fact that defendants made no admission of securities violations, both sides assume that the amounts ordered to be repaid here are a form of "disgorgement," rather than the simple settlement of a law suit. An amount owed under a judgment enforcing a settlement agreement, which is a contract, might well be a "debt" for purposes of the Debt Act. But since defendants do

injunctions and orders to pay disgorgement in an amount representing the funds received from the illegal activities alleged in the SEC's complaint, subject to a defense by the defendants of inability to pay some or all of the disgorgement. The district court entered the settlement as a consent order. It directed the defendants to pay disgorgement in the following amounts: Huffman—$133,774, Stewart—$513,784, Henry—$201,943, and Forsberg—$152,719.

The defendants claimed they were unable to pay the disgorgement. Following a hearing, a magistrate judge appointed by the district court determined that the Debt Act applies to disgorgement orders and hence reduced the amount each defendant would have to pay in accordance with Texas homestead, personal property, and retirement plan exemptions. The district court adopted the magistrate judge's findings and conclusions and ordered the defendants to disgorge the following amounts: Huffman—$4,000, Stewart—$354,925.59, Henry—$14,000, and Forsberg—nothing.

Stewart appeals, claiming that the magistrate judge miscalculated the amount he has available after exemptions are subtracted. The SEC cross-appeals, arguing that the Debt Act does not apply and that therefore the court was not required to exempt certain of the defendants' assets. Huffman and Stewart respond that the Debt Act does apply to disgorgement orders.[2]

II

We first address whether the Debt Act applies to disgorgement orders in the context of a securities violation. The Debt Act is the exclusive means for the United States and its agencies to collect "debts." It permits an individual debtor to exempt from collection under the Act any property that is exempt from debt collection under the state law of the debtor's domicile. 28 U.S.C. § 3014(a)(2)(A). The Act expressly does not apply to collection of any monies owed which are not debts. 28 U.S.C. § 3001(c). The critical question is what the Act means by "debt." The Act defines a "debt" as

(A) an amount that is owing to the United States on account of a direct loan, or loan insured

---

not make the argument that this case should be analyzed under standard contract principles, rather than under disgorgement principles, we express no opinion on the merits of such an argument.

[2]Henry and Forsberg are cross-appellants, but they elected not to file briefs. Our opinion necessarily applies to their orders, however.

or guaranteed by the United States;  or

(B) an amount that is owing to the United States on account of a fee, duty, lease, rent, service, sale of real or personal property, overpayment, fine, assessment, penalty, restitution, damages, interest, tax, bail bond forfeiture, reimbursement, recovery of a cost incurred by the United States, or other source of indebtedness to the United States, but that is not owing under the terms of a contract originally entered into by only persons other than the United States.

28 U.S.C. § 3002(3)(A) and (B).

Although "disgorgement" nowhere appears on this list, the defendants argue that disgorgement should be considered a form of "restitution" or an "other source of indebtedness to the United States."

Despite some casual references in our caselaw to the contrary, see, for example, *SEC v. Blatt,* 583 F.2d 1325, 1335 (5th Cir.1978) (describing disgorgement order in one isolated phrase as "this restitution"), disgorgement is not precisely restitution.  Disgorgement wrests ill-gotten gains from the hands of a wrongdoer. *Commodities Futures Trading Comm'n v. American Metals Exchange Corp.,* 991 F.2d 71, 76 (3rd Cir.1993); *SEC v. Blatt, supra.*  It is an equitable remedy meant to prevent the wrongdoer from enriching himself by his wrongs.  Disgorgement does not aim to compensate the victims of the wrongful acts, as restitution does. *SEC v. Commonwealth Chemical Securities, Inc.,* 574 F.2d 90, 102 (2d Cir.1978).  Thus, a disgorgement order might be for an amount more or less than that required to make the victims whole.  It is not restitution.

A disgorgement order also does not seem to be an "other source of indebtedness to the United States."  Construction of this catch-all phrase turns on the meaning of "indebtedness," which itself refers to "debt."  We have not traditionally understood a disgorgement obligation to be "a mere money judgment or debt" but rather more akin to "an injunction in the public interest." *Pierce v. Vision Investments Inc.,* 779 F.2d 302, 307 (5th Cir.1986).  Although *Pierce* involved the question whether contempt sanctions enforcing a disgorgement order constituted a debt, resolution of the case turned on the nature of the disgorgement order itself.  Because disgorgement is more like a continuing injunction in the public interest than a debt, we held in *Pierce* that the disgorgement order could be enforced by contempt sanctions.  Nothing in the Debt Act disturbs this traditional understanding of the nature of debt in relation to disgorgement.  Therefore, disgorgement is not an

"other source of indebtedness to the United States."[3]

In short, disgorgement is not a "debt" under the Debt Act. The defendants could not avail themselves of state law exemptions under the Debt Act. This is not to say, however, that such exemptions may never be taken into account by the court.

### III

The district court has broad discretion in fashioning the equitable remedy of a disgorgement order. *See American Metals Exchange, supra.* It may decide that some property should be exempt from such an order and may take state law as its guide. In this case, however, no such discretion was exercised because the magistrate judge and district court erroneously concluded that the Debt Act applied to disgorgement, *requiring* the exemption of certain assets. As a result, we must reverse and remand so that the district court may reconsider its decision in light of the inapplicability of the Debt Act to these disgorgement orders.

Although the necessity for remand renders moot most of Stewart's factual challenges to the magistrate judge's determination of his ability to pay, he raises one overriding issue that must still be addressed. The magistrate judge took her cue for evaluating his ability to pay from an old Fifth Circuit case that held an employer bound to prove "plainly and unmistakably" his inability to comply with an FLSA injunction. *Hodgson v. Hotard,* 436 F.2d 1110, 1115 (5th Cir.1971), citing *Arnold v. Ben Kanowsky, Inc.,* 361 U.S. 388, 392, 80 S.Ct. 453, 456, 4 L.Ed.2d 393 (1960). Stewart concedes that he had the burden to prove inability to pay, but he disputes that this burden is greater than the usual civil preponderance standard. We agree with Stewart. *Hodgson* does not erect a more-than-preponderance standard that SEC advocates and the magistrate judge evidently employed. In *Hodgson,* egregious facts led to strong language expressing the court's disbelief at Hotard's sudden alleged penury. As the court emphasized, the sole evidence of Hotard's inability to pay was his

---

[3]Defendants mention two other arguments why the Debt Act should apply to the SEC's disgorgement order. First, they invoke *ejusdem generis,* asserting that "disgorgement" is sufficiently like the other 16 types of debt listed in the Debt Act to be an "other source of indebtedness." For the reasons detailed above, we disagree. Second, they would apply the Bankruptcy Code's all-encompassing definition of debt. 11 U.S.C. §§ 101(5), 101(12). This is silly; no reason is advanced to equate terms defined quite differently in different statutes.

unsubstantiated testimony that he had no money. The record suggested he had closed out bank accounts and transferred property to evade an order under the FLSA. The court reversed and remanded, holding that Hotard must prove objectively his inability to pay; "plain and unmistakable" proof simply meant more credible proof than had theretofore been presented. In the wake of *Hodgson,* Stewart had to prove by a preponderance the extent to which he is unable to pay the disgorgement order.[4] The district court was not bound, however, to accept his unsubstantiated, self-serving testimony as true.

We leave to the trial court the decision whether on remand to re-open the evidence or to re-evaluate it as to all four appellees in light of the thorough record already compiled.

For the above reasons, the judgment of the district court is REVERSED and the case REMANDED for further proceedings.

REVERSED and REMANDED.

---

[4]It does not disserve the SEC or other federal agencies to hold that a party bound by a consent order implicating public rights must satisfy the court of his inability to pay by a preponderance of the evidence. There is no statutory mandate for a higher burden of proof, and implying one from the language in *Hodgson* verges on semantic gamesmanship. *Hodgson* 's careful description of the types of evidence Hotard should adduce to prove inability to pay is far more useful to the public than the vague, unusual call for plain and unmistakable proof.