**In re Lisa Diana PITTS, Debtor.**

**Lisa Diana Pitts, Plaintiff,**

v.

**Ohio Department of Taxation, Defendant.**

**Bankruptcy No. 98–3134.**

United States Bankruptcy Court, N.D. Ohio.

Sept. 9, 1999.

Lisa Diana Pitts, Lima, OH, pro se.

David R. Taylor, III, Toledo, OH, for plaintiff.

Ohio Dept. of Taxation, Columbus, OH, pro se.

Raymond L. Beebe, Timothy R. Reynolds, Toledo, OH, for defendant.

## MEMORANDUM OPINION AND DECISION

RICHARD L. SPEER, Chief Judge.

This case comes before the Court upon the Plaintiff's Amended Complaint to Discharge Tax Debts owed to the Defendant, and to Avoid the Liens created thereby. The Defendant filed an Answer to the Plaintiff's Amended Complaint admitting the substantive allegations contained therein. However, the Defendant denied that the Court had the jurisdictional authority to hear the case pursuant to the Eleventh Amendment of the United States Constitution. On November 24, 1998, a pretrial was held on the matter at which time the Court ordered the Parties to report to the Court by December 18, 1998. This deadline was subsequently extended to December 24, 1998, upon the Court granting a Motion for an Extension of time submitted by the Plaintiff. On December 23, 1998, the Plaintiff submitted to the Court a Memorandum in Support of Jurisdiction. However, the Defendant failed to submit any memorandum in opposition to jurisdiction within the time allocated by the Court. Accordingly, the Court will rule on the merits of the case based upon the evidence and arguments which are presently before it. Based upon this review, and for the following reasons, the Court finds that it lacks the jurisdictional basis on which to adjudicate the Plaintiff's claim, and thus the Plaintiff's case is Dismissed.

## FACTS

The Parties do not dispute the underlying facts of this case. Hence, the Court will accept as accurate the facts enumerated by the Plaintiff, Lisa D. Pitts (hereinafter Plaintiff), in her Memorandum in Support of Jurisdiction.

In 1992 and 1993, the Plaintiff, along with her former husband, filed joint tax returns with the Ohio Department of Taxation (hereinafter Defendant). The tax liability of the Parties on these tax returns totaled Six Thousand Three Hundred Eighty-one and $^{57}/_{100}$ Dollars ($6,381.57). The Plaintiff's former husband, however, neglected to actually pay the tax debt, and thus the Ohio Department of Taxation filed liens against all the real property owned by the Plaintiff. Thereafter, on May 1, 1998, the Plaintiff filed for relief under Chapter 7 of the United States Bankruptcy Code, listing as an unsecured liability the tax debt she owed to the Defendant. The Defendant, however, did not file a proof of claim on this debt.

As a part of her bankruptcy case, the Plaintiff brought a Complaint against the Defendant seeking a determination that the tax debt at issue was dischargeable pursuant to 11 U.S.C. § 523(a)(1), and that any liens placed by the Defendant against the Plaintiff's real property were avoidable pursuant to 11 U.S.C. § 522(f). The Defendant, acting through its Special Counsel to the Ohio Attorney General, responded to the Plaintiff's Complaint by asserting that regardless of the merits of the Plaintiff's action, this Court lacked the jurisdictional basis to hear the case pursuant to the Eleventh Amendment of the United States Constitution. Specifically, the Defendant contends that in light of the Su-

preme Court's decision in *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996), the authority of this Court to bind the State of Ohio in a bankruptcy proceeding is limited to those occasions when the State has consented to the Court's jurisdiction. The Plaintiff, however, implores this Court to adopt the view espoused by Justice Stevens in his dissent in the *Seminole Tribe* case.

## LAW

### Amendment XI of the United States Constitution—Suits Against States

The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

## DISCUSSION

 It is a fundamental principle of law that a court must have a valid jurisdictional basis over both the subject matter and the parties involved in the proceeding in order to issue any enforceable order therefrom. *Stoll v. Gottlieb*, 305 U.S. 165, 171–172, 59 S.Ct. 134, 137–138, 83 L.Ed. 104 (1938); *Toumajian v. Frailey*, 135 F.3d 648, 652 (9th Cir.1998); citing *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 2 L.Ed. 60 (1803). It is also axiomatic that the federal courts are of limited jurisdiction, being circumscribed in their authority by both the Federal Constitution, and the laws duly enacted by the Congress of the United States. *The Belfast*, 74 U.S. 624,

19 L.Ed. 266, 7 Wall. 624 (1868); *Flast v. Cohen*, 392 U.S. 83, 94, 88 S.Ct. 1942, 1949 1950, 20 L.Ed.2d 947, 958 (1968); *Ulster County Court v. Allen*, 442 U.S. 140, 156, 99 S.Ct. 2213, 2223, 60 L.Ed.2d 777 (1979). In this case, the Defendant has asserted that the United States Constitution deprives this Court, as a federal court,[1] of any jurisdictional basis to hear the claim brought against it by the Plaintiff. Hence, the Defendant maintains that any order issuing from this Court against the Defendant would have no legal effect.

The Defendant's legal argument is based upon the Eleventh Amendment to the United States Constitution which prohibits the federal courts from hearing suits against unconsenting states in federal court which are based upon either diversity of citizenship, or those suits which are brought against an unconsenting state by one of its own citizens as well as by citizens of another state. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984); *Hans v. Louisiana*, 134 U.S. 1, 18–19, 10 S.Ct. 504, 33 L.Ed. 842 (1890). This immunity from suit also extends to any duly created agencies of the state. *Pennhurst State School*, 465 U.S. at 100, 104 S.Ct. 900; *Mt. Healthy City School District Board of Ed. v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977); *Lincoln County v. Luning*, 133 U.S. 529, 530, 10 S.Ct. 363, 364, 33 L.Ed. 766 (1890). For example, it is clear that a state taxing authority is afforded the protections contained in the Eleventh Amendment. *See, e.g., Ford Motor Co. v. Department of Treasury*, 323 U.S. 459, 463, 65 S.Ct. 347, 350, 89 L.Ed. 389 (1945).

*Northern Pipeline Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). Nevertheless, without ruling on the merits of this argument, it is unlikely that such an argument will prevail as 28 U.S.C. § 151 provides that bankruptcy courts will function as a "unit" of the Article III district courts, to which the district courts, pursuant to 28 U.S.C. § 157(a), may refer bankruptcy cases of the type described in 28 U.S.C. § 157(b).

---

1. For purpose of this analysis, the Court will assume that the Eleventh Amendment of the United States Constitution is applicable to the bankruptcy courts. There has, however, been some speculation that a bankruptcy court, as an Article I court, does not exercise "federal judicial power" for purposes of the Eleventh Amendment, and thus is not restricted thereby. *See* Samuel I. Bufford, *Seminole Tribe May Not Apply to Bankruptcy Courts*, 6 Consumer Bankr.News, Apr. 10, 1997; *see also*

Nevertheless, the immunity conferred to the states by the Eleventh Amendment is not absolute, and certain exceptions to its applicability do exist. *See, e.g., Ex Parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). Accordingly, two issues must be addressed by the Court before the Plaintiff's Complaint will be dismissed for want of jurisdiction. First, the Court must determine if the Eleventh Amendment is actually applicable in this case. Second, if the Eleventh Amendment is found to be applicable, the Court must decide whether any exceptions exist to its applicability.

## APPLICABILITY OF THE ELEVENTH AMENDMENT

■ The purpose of the Eleventh Amendment is to protect a state's sovereignty from the reach of the federal judiciary. *Seminole Tribe of Florida v. Florida,* 517 U.S. 44, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996). However, the Eleventh Amendment, by its specific language, only applies to "suits," and as Chief Justice Marshall noted in the case of *Cohens v. Virginia:* not all legal actions are suits for purposes of the protection afforded to the states by the Eleventh Amendment. 19 U.S. (6 Wheat.) 264, 407–12, 5 L.Ed. 257 (1821).

■ In determining whether a legal action is a suit for Eleventh Amendment purposes, it is very well established that any action by a private party against a state, which seeks to impose liability that must be paid from public funds of the state treasury, is a suit for purposes of the Eleventh Amendment. *See, e.g., Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 1356, 39 L.Ed.2d 662 (1974). Thus, any action against a state for damages stemming from a violation of the Bankruptcy Code is clearly a suit for Eleventh Amendment purposes. *Edelman v. Jordan,* 415 U.S. 651, 663, 94 S.Ct. 1347, 1356 39 L.Ed.2d 662 (1974) (a suit by private party seeking to impose a liability which must be paid from public funds in the state trea-

sury is barred by the Eleventh Amendment); *see also In re Lush Lawns,* 203 B.R. 418 (Bankr.N.D.Ohio 1996); *Nat'l Cattle Congress, Inc. v. Iowa Racing and Gaming Comm'n (In re Nat'l Cattle Congress, Inc.),* 91 F.3d 1113, 1114 (8th Cir. 1996); *Louis v. Barall (In re Louis),* 213 B.R. 796 (Bankr.D.Conn.1997); *In re Martinez,* 196 B.R. 225 (D.P.R.1996).

■ Notwithstanding, a bankruptcy case, standing alone, does not necessarily constitute a suit under the Eleventh Amendment, even though a state's pecuniary interests may be inadvertently modified or even eliminated by the bankruptcy court's administration of the debtor's bankruptcy estate. *In re Barrett Refining Corporation,* 221 B.R. 795, 803 (Bankr. W.D.Okla.1998). This supposition is based upon the very nature of a bankruptcy case. For example, in *In re Barrett Refining Corporation,* the court stated:

> in a bankruptcy case, the only party required to attend is the debtor. Creditors are not compelled to attend. Notice is given to the creditors but they are free to ignore the case. [In addition], a petition commencing a bankruptcy case does not assert or prosecute a claim against any other party. The debtor does not demand the presence of other parties to adjudicate a claim. Nor does the debtor, by the petition, 'sue' anyone or demand the restoration of some thing from an opposing party.

221 B.R. at 803. In addition, in *Maryland v. Antonelli Creditors' Liquidating Trust,* the court observed that, "the power of the bankruptcy court to enter an order confirming a plan ... derives not from jurisdiction over the state or other creditors, but rather from jurisdiction over debtors and their estates." 123 F.3d 777, 787 (4th Cir.1997); *see also California v. Deep Sea Research,* 523 U.S. 491, 118 S.Ct. 1464, 149 L.Ed.2d 626 (1998) (the Eleventh Amendment does not bar an exercise of in rem admiralty jurisdiction with respect to property not in possession of the state); *Gardner v. State of New Jersey,* 329 U.S. 565,

67 S.Ct. 467, 91 L.Ed. 504 (1947) (the whole process of proof, allowance, and distribution is, shortly speaking, an adjudication of interests claimed in a res); *but see French v. Georgia Dep't of Revenue (In re ABEPP Acquisition Corp.)*, 215 B.R. 513 (6th Cir. BAP 1997) (rejecting in rem argument concerning Eleventh Amendment immunity).

■ However, the demarcation line between those actions within a bankruptcy case that constitute a suit for Eleventh Amendment purposes, and those actions which do not, is not always clear. Thus, in undertaking any analysis concerning the applicability of the Eleventh Amendment, the Sixth Circuit Court of Appeals has directed this Court to look at the "essential nature and effect of the proceedings, as it appears from the entire record." *Wilson v. Beebe*, 770 F.2d 578, 587 (6th Cir.1985). In other words, the substance of the underlying action must be examined to determine if an action is a suit for purposes of the Eleventh Amendment. In making this determination, this Court, pursuant to the decision of *In re Barrett Refining Corporation*, will take into consideration the following six factors:

1) whether the proceeding is adversarial;

2) whether the proceeding arose as a result of a deprivation or injury;

3) whether there are at least two parties involved in the proceeding;

4) whether the attendance of the parties is required;

5) whether one of the parties is prosecuting a claim against the other;

6) whether the injured party is demanding the restoration of something from the defending party.

221 B.R. 795, 803 (Bankr.W.D.Okla.1998) (interpreting *Cohens v. Virginia* ).

■ Applying these factors to the instant case, it is clear that the portion of the Plaintiff's Complaint relating to the avoidance of the Defendant's liens comports with all of the above factors. For example, a proceeding to avoid a lien clearly stems from a deprivation or injury, and upon a favorable outcome for the plaintiff, will also result in the restoration of something from the defending party. By comparison, the part of the Plaintiff's Complaint relating to the dischargeability of the tax debts does not necessarily comply with all of the foregoing factors. For example, even though such a proceeding is adversarial in nature under FED. R.BANKR.P. 7001(6), such an action, unlike the avoidance of a lien, will not necessarily entail the restoration of some thing from the defending party as a dischargeability action under § 523(a)(1) does not actually contest the validity of the debt, but instead only determines the debtor's personal liability thereon. *See Quillard v. United States (In re Quillard)*, 150 B.R. 291, 294–95 (Bankr.D.R.I.1993). In addition, a debtor's complaint to determine dischargeability is essentially in the nature of a declaratory judgment,[2] and as such does not necessarily constitute a suit for Eleventh Amendment purposes. *See, e.g., Powder River Basin Resource Council v. Babbitt*, 54 F.3d 1477, 1483 (10th Cir.1995) (only declaratory judgments that seek retroactive relief are barred by Eleventh Amendment). Nevertheless, the Court finds, for the following reasons, that a dischargeability action is in the nature of a suit for purposes of the Eleventh Amendment:

First, a state's participation in a dischargeability action is required, and such compulsory attendance by a state in a federal court flies square into the face of the Eleventh Amendment. *See* FED. R.BANKR. 7055. For example, in *Seminole Tribe of Florida*, the Supreme Court stated, the Eleventh Amendment was meant to avoid "the indignity of subjecting a

---

**2.** *Fidelity Nat'l Title Ins. Co. v. Franklin (In re Franklin)*, 179 B.R. 913, 918 (Bankr.E.D.Cal. 1995) (stating that a judgment to determine

nondischargeability under § 523 is a declaratory judgment).

State to the coercive process of judicial tribunals at the instance of private parties." 517 U.S. 44, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996) citing *Puerto Rico Aqueduct and Sewer Authority v. Metcalf & Eddy*, 506 U.S. 139, 113 S.Ct. 684, 121 L.Ed.2d 605 (1993) (internal quotation marks omitted). Second, the type of relief sought by a plaintiff suing a state is not dispositive to the question of whether the suit is barred by the Eleventh Amendment. *Pennhurst*, 465 U.S. at 100–01, 104 S.Ct. at 900; *see also Seminole*, 517 U.S. at 58, 116 S.Ct. at 1114. Thus, merely because a dischargeability action may have some of the attributes of a declaratory judgment, does not in itself remove such an action from the protection afforded to the states by the Eleventh Amendment. Finally, the bankruptcy courts which have examined this issue, relying in large part on the foregoing principles, have almost exclusively held that the Eleventh Amendment applies to dischargeability actions brought under § 523 of the Bankruptcy Code. *See, e.g., In re Morrell*, 218 B.R. 87, 89–90 (Bankr.C.D.Cal.1997) (chapter 7 debtor's complaint to determine dischargeability of tax debt was barred by the Eleventh Amendment); *In re Kish*, 212 B.R. 808, 812 (D.N.J.1997) (chapter 7 debtor's complaint to determine that state surcharges were discharged was barred by the Eleventh Amendment); *In re Rose*, 214 B.R. 372, 376 (Bankr.W.D.Mo.1997) (granting state agency's motion to dismiss debtor's complaint to determine dischargeability of student loan debt); *Mitchell v. California Franchise Tax Bd. (In re Mitchell)*, 222 B.R. 877 (9th Cir. BAP 1998). *But see In re Ranstrom*, 215 B.R. 454, 455–56 (Bankr.N.D.Cal.1997) (holding that the bankruptcy court had jurisdiction to determine whether the debtors' tax debts were discharged in their chapter 7 bankruptcy case). Accordingly, without a showing that an exception exists to the applicability of the Eleventh Amendment in this case, the Plaintiff's Complaint must be dismissed for want of jurisdiction.

## EXCEPTIONS TO THE APPLICABILITY OF THE ELEVENTH AMENDMENT

■ There exist three possible exceptions to the constitutional bar of federal court jurisdiction provided for by the Eleventh Amendment. First, suits against state officials in their individual capacities are not barred by the Eleventh Amendment under what is known as the *Young Doctrine*. *Ex Parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908); *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 268–70, 117 S.Ct. 2028, 2034, 138 L.Ed.2d 438 (1997). Second, individuals may sue a state directly if Congress has abrogated the state's immunity from suit. *Seminole Tribe*, 517 U.S. at 55, 116 S.Ct. at 1123. Finally, a state may waive its sovereign immunity and consent to be sued in federal court. *Id.* at 53–55, 116 S.Ct. at 1122–23; *Darne v. State of Wisconsin, Dept. of Revenue*, 137 F.3d 484, 488 (7th Cir.1998). In establishing if any of the foregoing exceptions to the Eleventh Amendment are applicable, it is the Plaintiff who bears the burden of proof as the Eleventh Amendment is a jurisdictional bar, not merely a defense to liability. *Houck & Sons, Inc. v. Transylvania County*, 852 F.Supp. 442, 452 (W.D.N.C. 1993) citing *Thomson v. Gaskill*, 315 U.S. 442, 447, 62 S.Ct. 673, 676, 86 L.Ed. 951 (1942).

### Ex Parte Young Doctrine

■ Under what has become to be known as the *Young Doctrine*, a party may sue a state officer to enjoin official actions that violate federal law, even if the state itself is immune from suit under the Eleventh Amendment. *Coeur d'Alene Tribe* 521 U.S. at 287–89, 117 S.Ct. at 2043 (O'Connor, J., concurring opinion). The *Young Doctrine* is premised on the notion that a state cannot authorize a state official to violate the Constitution and laws of the United States, and thus an action by a state official that violates federal law is not considered an action of the state, and

therefore is not shielded from suit by the Eleventh Amendment. *See Pennhurst State School, & Hosp. v. Halderman,* 465 U.S. 89, 102, 104 S.Ct. 900, 909, 79 L.Ed.2d 67 (1984); *Morrell,* 218 B.R. at 92.

▮▮▮▮ In order for a party to invoke the *Young Doctrine,* the following two elements must be averred: First, the party must allege that a state official is acting in violation of federal law. *See Pennhurst State School,* 465 U.S. at 106, 104 S.Ct. at 911. Second, the relief the party seeks must be prospective; that is the party must be seeking to bar future violations of federal law, instead of seeking monetary compensation or other retrospective relief for past violations. *Green v. Mansour,* 474 U.S. 64, 68, 106 S.Ct. 423, 425–26, 88 L.Ed.2d 371 (1985); *Quern v. Jordan,* 440 U.S. 332, 346–49, 99 S.Ct. 1139, 1147–49, 59 L.Ed.2d 358 (1979); *Edelman v. Jordan,* 415 U.S. 651, 664–71, 94 S.Ct. 1347, 1356–60, 39 L.Ed.2d 662 (1974); *see also French v. Georgia Department of Revenue (In re ABEPP Acquisition Corp.),* 215 B.R. 513, 519 (6th Cir. BAP 1997). Applying these requirements to the present case, it is clear that the *Young Doctrine* is inapplicable. For example, the Plaintiff's Complaint is against the State of Ohio, and not one of its officers. In addition, the Plaintiff in her Complaint is not seeking to bar a future violation of federal law.

### Congressional Abrogation

▮▮▮▮ The Congress of the United States has the power to statutorily abrogate a state's Eleventh Amendment immunity. *Seminole Tribe,* 517 U.S. at 55, 116 S.Ct. at 1122. In the context of a bankruptcy proceeding, Congress has provided for such an abrogation of a state's sovereign immunity under § 106(a) of the Bankruptcy Code which provides, in relevant part:

(a) Notwithstanding an assertion of sovereign immunity, sovereign immunity is abrogated as to a governmental unit to the extent set forth in this section with respect to the following:

(1) Sections 105, 106, 107, 108, 303, 346, 362, 363, 364, 365, 366, 502, 503, 505, 506, 510, 522, 523, 524, 525, 542, 543, 544, 545, 546, 547, 548, 549, 550, 551, 552, 553, 722, 724, 726, 728, 744, 749, 764, 901, 922, 926, 928, 929, 944, 1107, 1141, 1142, 1143, 1146, 1201, 1203, 1205, 1206, 1227, 1231, 1301, 1303, 1305, and 1327 of this title.

(2) The court may hear and determine any issue arising with respect to the application of such sections to governmental units.

However, Congress's power of abrogation is not absolute. Rather, due to the strong concern for the Eleventh Amendment's role as an essential component of our constitutional structure, a Congressional waiver of a state's Eleventh Amendment immunity is not automatically inferred by a federal statute simply purporting to confer upon a private party a federal cause of action against a state government. Instead, the Supreme Court has directed the federal courts to only find a Congressional abrogation of a state's Eleventh Amendment rights, if two conditions are met.

First, a court must determine if Congress has in fact expressed its intention in the statute to abrogate the states' Eleventh Amendment immunity, and thereby subject the states to suit in federal court. *Id.* In making this determination, however, a court must find that the statute contains more than just a general statement authorizing a suit in federal court. *Id.* citing *Atascadero State Hospital v. Scanlon,* 473 U.S. 234, 238–39, 105 S.Ct. 3142, 3145–46, 87 L.Ed.2d 171 (1985). Instead, Congress may only abrogate a States Eleventh Amendment immunity from suit in federal court by making its intention unmistakably clear in the language of the statute. *Seminole Tribe,* 517 U.S. at 55, 116 S.Ct. at 1123, citing *Dellmuth v. Muth,* 491 U.S. 223, 227–28, 109 S.Ct. 2397, 2399–2400, 105 L.Ed.2d 181 (1989).

Applying this standard to the instant case, the Court holds that the language contained in § 106(a) of the Bankruptcy Code, being a clear and unmistakable waiver, unequivocally demonstrates a Congressional intent to abrogate the sovereign immunity of a state for bankruptcy actions involving the dischargeability of debts and the avoidance of liens. *See, e.g., Elias v. United States of America (In re Elias),* 218 B.R. 80, 83 (9th Cir. BAP 1998); *In re Martinez,* 196 B.R. 225, 229 (D.P.R.1996); *Tri–City Turf Club, Inc. v. Kentucky Racing Comm'n (In re Tri–City Turf Club, Inc.),* 203 B.R. 617, 619 (Bankr.E.D.Ky. 1996); *Ellenberg v. Bd. of Regents (In re Midland Mechanical Contractors, Inc.),* 200 B.R. 453, 457 (Bankr.N.D.Ga.1996). Reinforcing the Court's holding is the fact that § 106(a) was specifically amended in 1994 in order to address two Supreme Court decisions which had held that an earlier and less specifically-worded version of the current § 106(a) [3] was insufficient to demonstrate a clear expression of congressional intent to abrogate the sovereign immunity of the states and the federal government. *United States v. Nordic Village, Inc.,* 503 U.S. 30, 34, 112 S.Ct. 1011, 1015, 117 L.Ed.2d 181 (1992); *Hoffman v. Conn. Dep't of Income Maintenance,* 492 U.S. 96, 104, 109 S.Ct. 2818, 2824, 106 L.Ed.2d 76 (1989).

Nevertheless, simply because Congress has unequivocally expressed its intention to abrogate a state's Eleventh Amendment immunity, does not denote that Congress actually has the authority to do so. Rather, a court must take an additional step and determine if Congress' unequivocal statement purporting to abrogate a state's sovereign immunity was taken pursuant to a valid exercise of Congressional power.

*Green v. Mansour,* 474 U.S. 64, 68, 106 S.Ct. 423, 426, 88 L.Ed.2d 371 (1985).

■ Under the Constitution, there exist two possible sources from which Congress may abrogate a state's sovereign immunity, as it pertains to the enforceability of the bankruptcy laws in a federal forum. *Seminole Tribe of Florida,* 517 U.S. at 58–60, 116 S.Ct. at 1124–26. The first and most obvious source is the Bankruptcy Clause contained in Article I of the United States Constitution which clearly confers upon Congress the authority to establish uniform bankruptcy laws in the United States. U.S. Const. art. I, § 8, cl. 4.[4] However, like any other law that Congress implements pursuant to their Constitutional authority, such a law cannot violate any other provision contained in the Constitution. Thus, the question to the Court now becomes whether the Eleventh Amendment prohibits Congress from enacting bankruptcy laws, pursuant to its Article I powers, which purport to give the federal courts jurisdiction over the states. Put another way, if the source of Congressional authority to waive a state's sovereign immunity under § 106(a) of the Bankruptcy Code was taken from Article I of the Constitution, does the Eleventh Amendment then render that portion of § 106(a) of the Bankruptcy Code unconstitutional?

Originally, in *Pennsylvania v. Union Gas Co.,* the Supreme Court held that Congress had the authority under Article I of the Commerce Clause to abrogate a state's Eleventh Amendment rights. 491 U.S. 1, 13–15, 109 S.Ct. 2273, 2281–82 105 L.Ed.2d 1 (1989). This holding was later interpreted to extend to Congressional au-

---

**3.** The old version of § 106(a) was denominated § 106(c), and provided, in pertinent part, that notwithstanding any assertion of sovereign immunity (1) a provision of this title that contains "creditor," "entity," or "governmental unit" applies to governmental units; and (2) a determination by the court of an issue arising under such a provision binds governmental units.

**4.** The Bankruptcy Clause provides that, "[t]he Congress shall have Power ... to establish a uniform Rule of Naturalization, and uniform Laws on the subject of Bankruptcies throughout the United States."

thority to waive a state's Eleventh Amendment rights under any Article I provision, including the Bankruptcy Clause. *In re Merchants Grain, Inc.*, 59 F.3d 630, 636 (7th Cir.1995); *In re McVey Trucking, Inc.*, 812 F.2d 311, 316 (7th Cir.), *cert. denied sub nom. Edgar v. McVey Trucking Co.*, 484 U.S. 895, 108 S.Ct. 227, 98 L.Ed.2d 186 (1987). The Supreme Court's ruling in *Seminole Tribe of Florida v. Florida*, however, effectively changed all that. 517 U.S. 44, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996).

The *Seminole Tribe* case involved the constitutionality of a provision under the Indian Gaming Regulatory Act, which had been instituted by Congress pursuant to its powers under the Indian Commerce Clause. In 1991, the Seminole Indian Tribe of Florida brought suit against the state of Florida under this regulatory act. Florida, however, filed a motion to dismiss, alleging that the suit violated the State's immunity from suit as provided for in the Eleventh Amendment. The United States Supreme Court granted *certiorari*, and held that the Eleventh Amendment did in fact prevent Congress from authorizing suits by Indian tribes against the states for prospective injunctive relief to enforce legislation enacted pursuant to the Indian Commerce Clause contained in Article I of the Constitution. *Id.* at 53, 116 S.Ct. at

1122.[5] In addition, even though the facts of *Seminole Tribe* only involved the ability of Congress to waive a state's sovereign immunity under the Indian Commerce Clause of Article I, the Supreme Court also addressed the matter of whether Congress had the power to abrogate a state's Eleventh Amendment immunity from suit under any other provisions contained in Article I. Specifically, the Supreme Court in *Seminole Tribe* stated that, "[t]he Eleventh Amendment restricts the judicial power under Article III, and Article I cannot be used to circumvent the constitutional limitations placed upon federal jurisdiction." *Id.* at 72–73, 116 S.Ct. at 1131–1132.

Courts interpreting this language, as it pertains to the constitutionality of § 106(a) of the Bankruptcy Code, have almost exclusively held that Congress does not have the authority to abrogate a state's Eleventh Amendment rights under Article I of the Constitution.[6] Such a position is supported by the case of *Ohio Agr. Commodity Depositors Fund v. Mahern*, which challenged the constitutionality of § 106(a) of the Bankruptcy Code. 517 U.S. 1130, 116 S.Ct. 1411, 134 L.Ed.2d 537 (1996). In *Mahern*, the Supreme Court, without making any specific holdings, remanded the case back to the Seventh Circuit based

---

5. The Court also held that the Young Doctrine does not permit suits for prospective injunctive relief against a governor to enforce the good-faith bargaining requirement of the Indian Gaming Regulatory Act. *Seminole*, 517 U.S. at 53, 116 S.Ct. at 1122.

6. *See, e.g., Sacred Heart Hospital v. Dep't of Public Welfare (In re Sacred Heart Hospital),* 133 F.3d 237, 245 (3rd Cir.1998); *Matter of Estate of Fernandez,* 123 F.3d 241, 245 (5th Cir.1997); *Schlossberg v. Maryland (In re Creative Goldsmiths, Inc.),* 119 F.3d 1140, 1147 (4th Cir.1997); *In re Martinez,* 196 B.R. 225, 228 (D.P.R.1996); *Elias v. United States (In re Elias),* 218 B.R. 80, 86 (9th Cir. BAP 1998); *In re Harris,* 213 B.R. 796, 798 (Bankr.D.Conn.1997); *Mueller v. Idaho (In re Mueller),* 211 B.R. 737, 743 (Bankr.D.Mont. 1997); *In re NVR L.P.,* 206 B.R. 831, 843 (Bankr.E.D.Va.1997), *rev'd in part,* 222 B.R.

514 (E.D.Va.1998); *Koehler v. Iowa College Student Aid Commission (In re Koehler),* 204 B.R. 210, 215 (Bankr.D.Minn.1997); *In re Lush Lawns, Inc.,* 203 B.R. 418, 420–21 (Bankr.N.D.Ohio 1996); *Ossen v. Dep't of Social Services (In re Charter Oak Associates),* 203 B.R. 17, 21 (Bankr.D.Conn.1996); *Sparkman v. Dep't of Revenue (In re York–Hannover Developments, Inc.),* 201 B.R. 137, 141 (Bankr.E.D.N.C.1996); *Ellenberg v. Bd. of Regents (Matter of Midland Mechanical Contractors, Inc.),* 200 B.R. 453 (Bankr.N.D.Ga. 1996). *But see Ranstrom v. Internal Revenue Service (In re Ranstrom),* 215 B.R. 454, 455–56 (Bankr.N.D.Cal.1997) (holding that the bankruptcy court had jurisdiction to determine whether the debtors' tax debts were discharged in their chapter 7 bankruptcy case).

upon its decision in *Seminole Tribe,*[7] thus, ostensibly indicating that the matter was once and for all settled.

The Plaintiff, however, implores this Court to adopt the dissent's view in *Seminole Tribe* which would allow Congress to abrogate a state's sovereign immunity pursuant to its powers under Article I of the Constitution. Unfortunately for the Plaintiff, no matter how much this Court may or may not agree with the dissent's view, this Court is obligated to follow the majority view in *Seminole Tribe. See, e.g., Ragsdale v. Unum Life Ins. Co. of Am.,* 999 F.Supp. 1016, 1024 (N.D.Ohio 1998) citing *Rodriguez de Quijas v. Shearson/American Express, Inc.,* 490 U.S. 477, 484, 109 S.Ct. 1917, 1921–22, 104 L.Ed.2d 526 (1989). Of course, an argument can be made that any language, by the majority in *Seminole Tribe,* affecting the constitutionality of § 106(a) is merely dicta in that the Supreme Court's holding in *Seminole Tribe* was not specifically based upon the constitutionality § 106(a). However, in light of the strong language used by the majority in *Seminole Tribe* against Congressional interference with a state's Eleventh Amendment rights vis-a-vis Article I of the Constitution, the Court declines to adopt such an approach. Accordingly, the Court holds that the Supreme Court's decision in *Seminole Tribe* renders § 106(a) of the United States Bankruptcy Code unconstitutional in so far as the Section was enacted pursuant to Congress' powers under Article I of the Constitution, and to the extent that it purports to abrogate a state's Eleventh Amendment immunity.

The second possible source from which Congress may establish bankruptcy laws is pursuant to the enabling clause contained in the Fourteenth Amendment of the United States Constitution. In fact, a few bankruptcy courts, when faced with a constitutional challenge to § 106(a), have already held that the Fourteenth Amendment does, in fact, provide a sufficient avenue through which Congress could have effectuated this Country's bankruptcy laws. *See, e.g., Burke v. Georgia (In re Burke),* 203 B.R. 493, 497 (Bankr.S.D.Ga. 1996), *aff'd on other grounds,* 146 F.3d 1313 (11th Cir.1998); *Headrick v. Georgia (In re Headrick),* 200 B.R. 963, 967 (Bankr.S.D.Ga.1996), *aff'd on other grounds sub nom Dept. of Revenue v. Burke (In re Burke),* 146 F.3d 1313 (11th Cir.1998); *Mather v. Oklahoma Employment Security Comm'n (In re Southern Star Foods, Inc.),* 190 B.R. 419, 426 (Bankr.E.D.Okla.1995).

The reason for these courts using the Fourteenth Amendment as the source for the creation of this Country's bankruptcy laws is that the Fourteenth Amendment expands the power of the federal government at the expense of the state governments. Thus, the Fourteenth Amendment, unlike Article 1, has always been a viable source through which Congress could abrogate a state's Eleventh Amendment Immunity. *Fitzpatrick v. Bitzer,* 427 U.S. 445, 452–456, 96 S.Ct. 2666, 2669–2671, 49 L.Ed.2d 614 (1976).[8] This precept was recently upheld in *Seminole Tribe* when the Supreme Court stated, "through the Fourteenth Amendment, federal power extend[s] to intrude upon the province of

---

**7.** It appears in *Mahern* that the issue of the constitutionality of § 106(a) has become moot due to the resolution of a related proceeding on other grounds. *In re Merchants Grain, Inc.,* 93 F.3d 1347, 1351 (7th Cir.1996), *cert. denied,* 519 U.S. 1111, 117 S.Ct. 948, 136 L.Ed.2d 837 (1997); *see also Sparkman v. Florida (In re York–Hannover Developments, Inc.),* 201 B.R. 137, 140 n. 6 (Bankr.E.D.N.C. 1996).

**8.** The Supreme Court did not address whether the Fourteenth Amendment authorized Congress to enforce the Indian Gaming Regulatory Act against the States because the petitioner abandoned this issue after the Eleventh Circuit Court of Appeals rejected its argument that the Indian Gaming Regulations Act created a liberty and property interest subject to Congress' protection under the Fourteenth Amendment. *Seminole Tribe v. Florida,* 517 U.S. 44, 59–60, 116 S.Ct. 1114, 1125, 134 L.Ed.2d 252 (1996).

the Eleventh Amendment and therefore ... Section 5 of the Fourteenth Amendment allow[s] Congress to abrogate the immunity from suit guaranteed by that Amendment." 517 U.S. at 59, 116 S.Ct. at 1125; citing *Fitzpatrick v. Bitzer*, 427 U.S. 445, 455, 96 S.Ct. 2666, 2671, 49 L.Ed.2d 614 (1976). The following will now examine the merits of this argument.

The Fourteenth Amendment to the United States Constitution, which was created in the wake of this country's Civil War, provides, in relevant part:

Section 1. All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

Section 5. The Congress shall have power to enforce, by appropriate legislation, the provisions of this article.

U.S. Const. amend. XIV § 1, cl. 5. Of the above provisions contained in the Fourteenth Amendment, only the Privilege and Immunity Clause is possibly capable of being used to merit the implementation of bankruptcy legislation. For example, it is inconceivable to the Court that the establishment of this Country's bankruptcy laws could be considered a substantive right under the Due Process Clause, or that the lack of a Bankruptcy Code could be construed as denying a person their right to the equal protection of the laws.

The federal courts have determined that the Privilege and Immunity Clause does not "encompass the right to have a federal question heard in a federal forum." *Carr v. Axelrod*, 798 F.Supp. 168, 172 (S.D.N.Y. 1992), *aff'd*, 996 F.2d 302 (2nd Cir.1993), *cert. denied*, 510 U.S. 931, 114 S.Ct. 344, 126 L.Ed.2d 308 (1993). In addition, Congress's power to pass laws under the Fourteenth Amendment, which comes from the enabling clause contained in Section 5, is limited. Specifically, the Supreme Court has determined that the enabling clause of the Fourteenth Amendment does not grant to Congress the plenary power to pass substantive legislation; but instead, only grants to Congress the power to achieve the remedial ends advanced by the Fourteenth Amendment. *City of Boerne v. Flores*, 521 U.S. 507, 519–21, 117 S.Ct. 2157, 2164, 138 L.Ed.2d 624 (1997). Hence, in conformity with these tenets, in order for the Privilege and Immunity Clause of the Fourteenth Amendment to confer upon Congress the power to pass substantive bankruptcy legislation, bankruptcy itself must be recognized as a Privilege and Immunity under the Fourteenth Amendment.

The Privilege and Immunity Clause has been interpreted to only protect those rights and privileges which, under the laws and Constitution of the United States, are incident to a person's citizenship of the United States. In other words, the Clause only protects those rights which owe their existence to the Federal Government, its National Character, its Constitution, or its Laws. *Snowden v. Hughes*, 321 U.S. 1, 6–7, 64 S.Ct. 397, 400, 88 L.Ed. 497 (1944) citing *In re Slaughter–House Cases*, 83 U.S. (16 Wall.) 36, 74, 79, 21 L.Ed. 394 (1873). This Court, however, simply cannot find that bankruptcy in and of itself encompasses such characteristics. For example, there is no actual right conferred upon the citizens of the United States to obtain a bankruptcy discharge. *United States v. Kras*, 409 U.S. 434, 447–48, 93 S.Ct. 631, 638–39, 34 L.Ed.2d 626 (1973). In fact, there is no actual requirement that Congress actually establish bankruptcy laws at all. Instead, the Constitution merely authorizes Congress to "establish ... uniform Laws on the subject of Bankruptcies throughout the United States." Art. I, § 8, cl. 4. In addition, the Court notes that bankruptcy is not at all unique

to our national character or federal government as bankruptcy laws are common place among other republican forms of government. Accordingly, the Court cannot find that the Privilege and Immunity Clause of the Fourteenth Amendment was the source from which the bankruptcy laws of the United States were enacted. Three additional considerations further support this holding. First, the Supreme Court has itself never interpreted a bankruptcy discharge as a privilege or immunity under the Fourteenth Amendment.[9] *See Twining v. New Jersey,* 211 U.S. 78, 97, 29 S.Ct. 14, 18–19, 53 L.Ed. 97 (1908). Hence, in the absence of such a pronouncement, this Court is very hesitant to find that such a right exists. Second, the Fourteenth Amendment is completely silent about Congress' authority to enact bankruptcy legislation, while Article I explicitly authorizes the creation of bankruptcy laws pursuant to the Bankruptcy Clause contained therein. Thus, basic principles of statutory interpretation dictate that the Fourteenth Amendment not be considered a valid source of bankruptcy legislation. As the Court in *Schlossberg v. Maryland (In re Creative Goldsmiths of Washington, D.C., Inc.),* stated, "[w]e will not presume that Congress intended to enact a law under a general Fourteenth Amendment power to remedy an unspecified violation of rights when a specific, substantive Article I power clearly enabled the law." 119 F.3d 1140, 1146 (4th Cir.1997), *cert. denied,* 523 U.S. 1075, 118 S.Ct. 1517, 140 L.Ed.2d 670 (1998) *see also Wilson–Jones v. Caviness,* 99 F.3d 203 (6th Cir.1996). Finally, there is no evidence in the legisla-

tive history of § 106(a) to show that it was enacted pursuant to the Fourteenth Amendment. *Pennhurst State Sch. & Hosp. v. Halderman,* 451 U.S. 1, 16, 101 S.Ct. 1531, 1539, 67 L.Ed.2d 694 (1981) (in the absence of a specific pronouncement that a statute was enacted pursuant to Congress' legislative powers under the Fourteenth Amendment, a court should be hesitant to find that such an unstated intent exists because such legislation necessarily imposes congressional policy on the states involuntarily). By comparison, the legislative history of § 106(a) contains numerous references to the Bankruptcy Clause. *In re NVR L.P.,* 206 B.R. 831, 840–41 (Bankr.E.D.Va.1997).

In summary, the Court finds that the Privilege and Immunity Clause, as contained in the Fourteenth Amendment of the United States Constitution, is not a valid source of Congressional authority to enact bankruptcy laws. Accordingly, as Article I is no longer a viable source to abrogate a state's Eleventh Amendment immunity, the Court holds that § 106(a) of the Bankruptcy Code may not be employed to involuntarily subject a sovereign state to suit in a federal bankruptcy court.

### Waiver and Consent to be Sued

■ It is a long established principle that a state may waive its immunity under the Eleventh Amendment and consent to be sued in federal court. *See, e.g., Clark v. Barnard,* 108 U.S. 436, 447, 2 S.Ct. 878, 882–83, 27 L.Ed. 780 (1883). However, the Supreme Court has held that, "[t]he test for determining whether a State has waived its immunity from federal court

9. The Supreme Court has recognized the following rights under the Privilege and Immunity Clause of the Fourteenth Amendment: (1) the right to pass freely from state to state. *Crandall v. Nevada,* 6 Wall. 35, 73 U.S. 35, 18 L.Ed. 745 (1867); (2) the right to petition Congress for redress of grievances. *United States v. Cruikshank,* 92 U.S. 542, 23 L.Ed. 588 (1875); (3) the right to vote for national officers. *Ku Klux Cases,* 110 U.S. 651, 4 S.Ct. 152, 28 L.Ed. 274 (1884); (4) the right to enter public lands. *United States v. Waddell,* 112 U.S. 76, 5 S.Ct. 35, 28 L.Ed. 673 (1884);

(5) the right to be protected from violence while in the lawful custody of a United States Marshal. *Logan v. United States,* 144 U.S. 263, 12 S.Ct. 617, 36 L.Ed. 429 (1892); (6) the right to inform United States authorities of any violation of its laws. *In re Quarles,* 158 U.S. 532, 15 S.Ct. 959, 39 L.Ed. 1080 (1895); (7) the right to carry on interstate commerce. *Crutcher v. Kentucky,* 141 U.S. 47, 11 S.Ct. 851, 35 L.Ed. 649 (1891); and (8) the right under 42 U.S.C. § 1982 to take and hold real property. *Oyama v. California,* 332 U.S. 633, 68 S.Ct. 269, 92 L.Ed. 249 (1948).

jurisdiction is a stringent one." *Atascadero State Hospital v. Scanlon,* 473 U.S. 234, 241, 105 S.Ct. 3142, 3146, 87 L.Ed.2d 171 (1985).

 There exist basically three methods by which a state may consent to be sued in federal court. The first, and most straightforward method, is an explicit waiver whereby a state expressly agrees to become subject to the jurisdiction of the federal courts. *See Id.* This is normally accomplished by the state declaring in its constitution, a statute, or a contract that it consents to the jurisdiction of the federal court. However, given the fact that Eleventh Amendment waivers are disfavored, such a waiver will only be found where the state has declared its intent to waive its Eleventh Amendment immunity "by the most express language or by such overwhelming implication from the text as will leave no room for any other reasonable construction." *Edelman v. Jordan,* 415 U.S. 651, 673, 94 S.Ct. 1347, 1361, 39 L.Ed.2d 662 (1974) quoting *Murray v. Wilson Distilling Co.,* 213 U.S. 151, 171, 29 S.Ct. 458, 464, 53 L.Ed. 742 (1909). For example, a waiver by a state court of its sovereign immunity from suit in its own courts will not, standing alone, be construed to be a waiver of a state's immunity from suit in the federal courts under the Eleventh Amendment. *Johns v. Supreme Court of Ohio,* 753 F.2d 524 (6th Cir.1985), *certiorari denied,* 474 U.S. 824, 106 S.Ct. 79, 88 L.Ed.2d 65, (1985) citing *Florida Dept. of Health v. Florida Nursing Home Assn.,* 450 U.S. 147, 150, 101 S.Ct. 1032, 1034, 67 L.Ed.2d 132 (1981). In addition, a state which merely accepts federal funds pursuant to a federal statute does not thereby waive its immunity under the Eleventh Amendment. *Atascadero State Hospital,* 473 U.S at 246–47, 105 S.Ct. 3142.

In the instant case, the Court holds that the State of Ohio did not explicitly waive its sovereign immunity as the Court was unable to discern, and the Parties did not present, any evidence tending to show that the State of Ohio effectuated an explicit waiver of its Eleventh Amendment immunity based upon the application of the foregoing principles.

 However, even in the absence of an explicit waiver by a state to become subject to the jurisdiction of the federal courts, a state's consent may still be inferred through its affirmative conduct in what is sometimes referred to as a constructive waiver. *Clark v. Barnard,* 108 U.S. at 448, 2 S.Ct. at 883; *Hankins v. Finnel,* 964 F.2d 853, 856 (8th Cir.1992); *Garrity v. Sununu,* 752 F.2d 727, 738 (1st Cir.1984). However, like an explicit waiver, before there is found to be a constructive waiver there must be an "unequivocal indication that the state intends to consent to federal jurisdiction that would otherwise be barred by the Eleventh Amendment." *Atascadero State Hosp.,* 473 U.S. at 238 n. 1, 105 S.Ct. at 3145 n. 1.

 One long accepted basis for finding a constructive waiver of a state's Eleventh Amendment immunity is by the state making a general appearance in the federal litigation.[10] *See, e.g., Clark v. Barnard,* 108 U.S. 436, 447, 2 S.Ct. 878, 882, 27 L.Ed. 780 (1883); *Ford Motor Co. v. Department of Treasury of Indiana,* 323 U.S. 459, 467–70, 65 S.Ct. 347, 352–53, 89 L.Ed. 389 (1945); *Petty v. Tennessee–Missouri Bridge Commission,* 359 U.S. 275, 276, 79 S.Ct. 785, 787, 3 L.Ed.2d 804 (1959); *Sosna v. Iowa,* 419 U.S. 393, 396 n. 2, 95 S.Ct. 553, 555 n. 2, 42 L.Ed.2d 532 (1975). This

**10.** The term constructive waiver, for purposes of the Eleventh Amendment, is most commonly used to refer to the situation where a state participates in a federal program and agrees to administer federal funds in accordance with federal laws. In such a situation, a state will be found to have waived its Eleventh Amendment rights when the federal statute manifests a clear intent to condition participation in the federally funded program on a state's consent to waive its Eleventh Amendment immunity. *Atascadero,* 473 U.S. at 247, 105 S.Ct. at 3149–50.

principle is based on the notion that it would be unfair to allow a state to defend an action, and thereafter depending on the outcome of the case either: (1) hold the Plaintiff to the verdict; or (2) allow the state to bring a motion to dismiss the case based upon the federal court's lack of jurisdiction under the Eleventh Amendment.

However, exactly what constitutes a general appearance for purposes of an Eleventh Amendment waiver is not always clear. For example, a state which merely files a responsive pleading is not deemed to have thereby made a general appearance. *Walker v. Felmont Oil Corp.,* 240 F.2d 912, 915 (6th Cir.1957); *MacDonald v. Board of Regents of University of Mich.,* 371 F.2d 818, (6th Cir.1967). On the other hand, a state which defends an action on the merits to its natural conclusion is normally deemed to have made a general appearance. The only exception to this rule occurs when the state official or employee who is directly associated with the action lacks the actual authority to waive the state's Eleventh Amendment Immunity. In other words, a state cannot be bound by a judgment when the person representing the state was not acting within the proper scope of their authority. *Ford Motor Co.,* 323 U.S. at 467, 65 S.Ct. at 352; *Freimanis v. Sea–Land Serv., Inc.,* 654 F.2d 1155, 1160 (5th Cir.1981); *Ellenberg v. Bd. of Regents (In re Midland Mechanical Contractors, Inc.),* 200 B.R. 453, 458 (Bankr.N.D.Ga.1996); *In re Creative Goldsmiths, Inc.,* 119 F.3d 1140, 1148 (4th Cir.1997).

In the case sub judice, the Court finds that the Defendant's actions in this proceeding are not enough to warrant a finding that the State of Ohio made a general appearance. This decision is predicated on the fact that the Defendant immediately raised the jurisdictional issue of this Court in their Amended Answer; and thereafter, the only contact the Defendant

had with this Court concerning the Plaintiff's Complaint was to assert that this Court lacked the jurisdictional authority to hear the Plaintiff's cause of action under the Eleventh Amendment. Thus, the Court can in no way construe the Defendant's action as involving a defense on the actual merits of the Plaintiff's Complaint. In addition, the Court questions whether the Defendant's attorney even had the actual authority to waive Ohio's sovereign immunity. This is because the Court can find no Ohio law conferring upon the Defendant's attorney, as special counsel to Ohio's Attorney General, the authority to waive Ohio's Eleventh Amendment immunity.

The final method by which a State may consent to a federal court's jurisdiction is by affirmatively entering the federal forum to voluntarily pursue its own interest. *State of Iowa v. Union Asphalt & Roadoils, Inc.,* 409 F.2d 1239 (8th Cir.1969) citing *People of Porto Rico v. Ramos,* 232 U.S. 627, 34 S.Ct. 461, 58 L.Ed. 763 (1914); *Clark v. Barnard,* 108 U.S. 436, 2 S.Ct. 878, 27 L.Ed. 780 (1883); *Rank v. United States,* 142 F.Supp. 1, 67 (S.D.Cal.1956).[11] In fact, the Eleventh Amendment is not actually applicable in this situation because the Eleventh Amendment only applies to suits "commenced or prosecuted against one of the United States." U.S. Const. amend. XI; *see supra,* discussion involving the applicability of the Eleventh Amendment. In the context of a bankruptcy proceeding, this type of situation commonly arises when the state files a proof of claim against the debtor's bankruptcy estate. In such a situation, normally no Eleventh Amendment issues are raised by such an act, in and of itself, as the state voluntarily invoked the jurisdiction of the bankruptcy court. *Wiswall v. Campbell,* 93 U.S. 347, 351, 23 L.Ed. 923 (1876). However, if the debtor

---

11. The difference with this method of waiver, and a constructive waiver, is that in this type of situation the state is the plaintiff in the action, while with a constructive waiver the state is the defendant.

or trustee thereafter institute a counterclaim against the state, the state may claim that such an action is thereby barred by the Eleventh Amendment. Of course, conversely the debtor or trustee will then assert that the state, by filing the proof of claim, waived any assertion to immunity that it may have had.

■ Originally, 11 U.S.C. § 106(b) dealt with this matter by providing that when a governmental unit files a proof of claim, it is deemed to have waived its immunity with respect to any claims which are property of the state and which arose out of the same transaction or occurrence as the governmental unit's claim against the estate. However, with the constitutionality of § 106(b) now suspect as a result of the Supreme Court's decision in *Seminole*,[12] bankruptcy courts may have to employ traditional methods of Eleventh Amendment waiver to determine the extent to which a state waives its sovereign immunity by voluntarily entering a federal forum. *See, e.g., French v. Georgia Department of Revenue*, 215 B.R. 513, 518 (6th Cir. BAP 1997) (adopting a compulsory counterclaim test to determine if a state, by filing a proof of claim, waived its rights under the Eleventh); *995 Fifth Ave. Associates, L.P. v. New York State Dep't of Taxation and Finance (In re 995 Fifth Ave. Associates, L.P.)*, 127 B.R. 533 (Bankr.S.D.N.Y.1991), *affirmed in part, reversed in part* 963 F.2d 503, *certiorari denied* 506 U.S. 947, 113 S.Ct. 395, 121 L.Ed.2d 302. Nevertheless, this issue will not be addressed, as there is nothing to indicate to the Court that the Defendant voluntarily availed themselves to the jurisdiction of this Court. For example, the Defendant did not file a proof of claim against the Plaintiff's bankruptcy estate, nor did the state bring any other actions against the Plaintiff in this Court. Accordingly, the Court finds that the Defendant did not effectuate an effective waiver of its Eleventh Amendment rights.

## CONCLUSION

In summation, the Court finds that the Plaintiff's Complaint to Discharge Tax Debts owed to the Defendant, and to avoid the Liens created thereby, constitutes a suit against the state for purposes of the Eleventh Amendment to the United States Constitution. Further, for the reasons enumerated in this Opinion, the Court does not find, under the circumstances of this case, that any of the recognized exceptions to the applicability of the Eleventh Amendment exist. Consequently, the Court must decline to hear the Plaintiff's cause of action against the Defendant. The Court, in making this Ruling, realizes that the Plaintiff may now be left without a remedy against the Defendant in light of the Supreme Court's recent decision in *Alden v. Maine*, 527 U.S. ——, 119 S.Ct. 2240, 2246, 144 L.Ed.2d 636 (1999), in which the Court held that "the powers delegated to Congress under Article I of the United States Constitution do not include the power to subject nonconsenting states to private suits for damages in state courts." In reaching the conclusion found herein, the Court has considered all of the evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically referred to in this Opinion.

Accordingly, it is

---

12. The courts are split on whether 11 U.S.C. § 106(b) is constitutional. For example, the following cases have all held that § 106(b) is unconstitutional: *In re NVR L.P.*, 206 B.R. 831, 838–39 (Bankr.E.D.Va.1997); *In re Creative Goldsmiths, Inc.*, 119 F.3d 1140, 1147 (4th Cir.1997); *In re C.J. Rogers, Inc.*, 212 B.R. 265, 273 (E.D.Mich.1997). On the other hand, the constitutional underpinnings of § 106(b) are the many cases holding that, as a matter of law, a governmental unit that commences a case in federal court waives its sovereign immunity as to claims arising out of the same transaction or occurrence, at least up to the amount of its claim. *See Gardner v. State of New Jersey*, 329 U.S. 565, 67 S.Ct. 467, 91 L.Ed. 504 (1947); *Clark v. Barnard*, 108 U.S. at 436, 2 S.Ct. at 883; *Genentech, Inc. v. Eli Lilly & Co.*, 998 F.2d 931, 946–47 (Fed.Cir.1993), *cert. denied, Regents v. Genentech, Inc.*, 510 U.S. 1140, 114 S.Ct. 1126, 127 L.Ed.2d 434 (1994).

**ORDERED** that the Complaint of the Plaintiff, Lisa Diana Pitts, in Case No. 98–3134, be, and is hereby, DISMISSED.