**In re Paul I. HICKMAN, Debtor.**

**Paul Hickman, Plaintiff,**

**v.**

**BWC State Ins. Fund, Defendant.**

**Nos. 00–3160, 00–31579.**

United States Bankruptcy Court,
N.D. Ohio.

March 1, 2001.

James A. Harris, Marion, OH, for plaintiff.

Trish D. Lazich, Assistant Attorney General, Cleveland, OH, for defendant.

### DECISION AND ORDER

RICHARD L. SPEER, Chief Judge.

In the above captioned adversary complaint, the Debtor, Paul Hickman (hereinafter referred to as the "Debtor"), seeks to discharge an obligation that he owes to the Defendant, BWC State Insurance Fund (hereinafter referred to as the Defendant). On September 20, 2000, the Court, in accordance with Bankruptcy Rule 7016, held a Pretrial conference on this matter. At this conference, the Parties agreed that before the case should continue, one narrow issue needed to be determined: whether this Court has jurisdiction to determine if the Debtor, in creating the debt at issue, was an "employer" within the meaning of those Ohio laws relating to Workers' Compensation. With respect to this issue, neither Party disputes the fact that if it were to be determined that the Debtor was not acting in the capacity of an "employer," no debt would be owed by the Debtor to the Defendant, which in turn would render, as moot, the Debtor's complaint to determine dischargeability.

With respect to the above issue raised by the Parties, the Court, at the Pretrial conference held on the matter, ordered the Parties to frame, in precise terms, the legal question(s) that they desired the Court to answer, and to then submit briefs in support of their respective positions. The Parties have since that time complied with this Court's Order; however, before addressing the substantive merits of the issue put forth by the Parties, a brief overview of the facts underlying the Debtor's complaint is in order.

On April 17, 2000, the Debtor petitioned this Court for relief under Chapter 7 of the United States Bankruptcy Code. Prior to filing for bankruptcy, the Debtor was engaged in the business of painting buildings. In this occupation, the Debtor, on at least a couple of occasions, received assistance with his painting business from a man by the name of Gregory Rader. The Debtor, however, did not consider Mr. Rader an employee, and as a result did not maintain for Mr. Rader's benefit, workers' compensation coverage.

On May 9, 1994, Mr. Rader, while working on a project with the Debtor, was injured when he fell off the roof of a building he was painting. Not long thereafter, Mr. Rader filed an application for

workers' compensation benefits for the injuries he sustained. The Ohio Bureau of Workers' Compensation then conducted an investigation of Mr. Rader's claim, later determining that the claim should be allowed. This decision necessarily required a determination that the Debtor was, for purposes of Ohio Workers' Compensation law, Mr. Rader's employer. On August 16, 1994, the Debtor was notified of the decision reached by the Ohio Bureau of Workers' Compensation through an initial order served upon him. In this Order, the Debtor was advised that he had fourteen (14) days to appeal the decision. The Debtor, however, within this time frame, did not formally contest the decision reached by the Ohio Bureau of Workers' Compensation.

On February 29, 1996, approximately eighteen (18) months after the initial order was entered, the Debtor filed a Motion with the Ohio Bureau of Workers' Compensation contesting the allowance of Mr. Rader's claim. In his Motion, the Debtor vehemently disputed the contention that Mr. Rader was his employee. As required by Ohio law, the contested claim was referred to the Industrial Commission of Ohio, who in turn scheduled a hearing for the matter. At the hearing, the Debtor was given the opportunity to state his case. However, after considering the Debtor's grievances, the Industrial Commission denied the Debtor's Motion on the basis of res judicata. The Commission's decision was subsequently affirmed on appeal.

In his bankruptcy petition, the Debtor listed a debt of Four Thousand Seven Hundred Thirty-five and 62/100 dollars ($4,735.62) owing to the Defendant, and thereafter filed the instant adversary proceeding to have this obligation determined to be a dischargeable debt. In its answer, the Defendant, in addition to raising the jurisdictional issue, contested the dischargeability of the Debtor's obligation on the basis that under 11 U.S.C. § 523(a)(7), the debt at issue is in the nature of a fine, penalty or forfeiture; or in the alternative, the Defendant states that the debt is a nondischargeable tax obligation under 11 U.S.C. § 523(a)(1)(A).

## LEGAL ANALYSIS

In conformance with this Court's Pretrial order of September 20, 2000, the Parties submitted to the Court this specific issue for a resolution:

Does the Bankruptcy Court have jurisdiction to determine the debtor's status as an "employer" under Ohio workers' compensation law when the Ohio Bureau of Workers' Compensation had previously determined the debtor to be an employer prior to the debtor's bankruptcy petition being filed?

With regards to this issue, the Debtor argues that this Court has the jurisdictional authority to make a finding that he was not an "employer" vis-a-vis Mr. Rader. This assertion is based primarily on the fact that dischargeability proceedings, being categorized for jurisdictional purposes as "core proceedings," are clearly within the scope of a bankruptcy court's jurisdiction. In opposition thereto, the Defendant, although agreeing that the Debtor's cause of action is a "core proceeding," has raised a number of legal issues including, but not limited to: discretionary abstention under 28 U.S.C. § 1334(c)(1),[1] and issue preclusion under 11 U.S.C.

---

1. This section provides, "[n]othing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11."

§ 505(a)(2)(A),[2] the later section of which provides that taxes, fines or penalties properly adjudicated prior to a bankruptcy case, may not be heard by a bankruptcy court.

 It is a basic tenet of our legal system that in order for a court to hear a party's claim or any issue relating thereto, the court must have a proper jurisdictional basis over the subject matter of the claim. *Pitts v. Ohio Dep't of Taxation (In re Pitts)*, 241 B.R. 862, 867 (Bankr.N.D.Ohio 1999). In this respect, Congress has conferred upon the bankruptcy courts the jurisdictional authority to hear and thereafter adjudicate certain types of actions known as "core proceedings." 28 U.S.C. § 157(b)(1); 28 U.S.C. § 1334. A "core proceeding" has been described as a proceedings involving a right or a cause of action created and directly related to federal bankruptcy law. *See Diamond Mortgage Corp. of Ill. v. Sugar*, 913 F.2d 1233, 1237 (7th Cir.1990), *cert. denied*, 498 U.S. 1089, 111 S.Ct. 968, 112 L.Ed.2d 1054 (1991). Chief among these types of actions are complaints to determine the dischargeability of a particular debt. 28 U.S.C. § 157(b)(2)(I). In this respect, however, the determination of whether a controversy is a "core proceeding" lies not on the underlying federal or state basis for the claim, but rather in its relationship to the basic functions of the bankruptcy court. *Scotland Guard Services, Inc. v. Autoridad de Energia Electrica (In re Scotland Guard Services, Inc.)*, 179 B.R. 764, 766 (Bankr.D.P.R.1993). Thus, a "core proceeding," and therefore a bankruptcy court's jurisdiction, is not circumscribed merely because issues involving non-bankruptcy law will be impacted by a decision rendered in the "core proceeding." Along this line, it has been held that a debtor's complaint to discharge a workers' compensation claims is a "core proceedings" over which a bankruptcy court may exercise jurisdiction. *See Baker v. United States (In re Baker)*, 100 B.R. 80, 82 (M.D.Fla. 1989). On the other hand, however, merely because this Court has the jurisdictional authority to decide actions involving the dischargeability of particular debts, including workers' compensation claims, does not automatically mean that the Court has the authority to adjudicate all issues associated with the underlying obligation. By way of example, it is axiomatic that the legal doctrine of collateral estoppel—which prohibits the relitigation of issues already decided by the same parties (or their privies) in a prior suit—may prevent issues from being again litigated in a later dischargeability proceeding. Moreover, as the Defendant correctly points out, a bankruptcy court may, in the interest of comity, decline from hearing certain matters even though such matters are technically speaking within the scope of the court's jurisdictional authority. 28 U.S.C. § 1334(c)(1). Further, on some matters, federal courts decline jurisdiction on the basis that the matter is purely within the realm of those issues dedicated to the exclusive authority of the states. *See, e.g., Zak v. Pilla*, 698 F.2d 800, 801 (6th Cir.1982) (per curiam) (federal courts traditionally decline to accept jurisdiction in parent-child, domestic relations or custody disputes and in adoption matters which are subject to state law and state court disposition).

 With regards to the latter consideration, the Sixth Circuit Court of Appeals, in a case involving a Chapter 11 bankrupt-

---

**2.** This section provides that, "[t]he court may not so determine—(A) the amount or legality of a tax, fine, penalty, or addition to tax if such amount or legality was contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction before the commencement of the case under this title[.]"

cy, has held that the federal courts, including bankruptcy courts, lack jurisdiction to determine claims brought under Ohio's laws on Workers' Compensation. Specifically, in *Ohio v. Mansfield Tire & Rubber Co. (In re Mansfield Tire & Rubber Co.),* 660 F.2d 1108 (6th Cir.1981), the Court stated:

> Claims of workers for injury, occupational disease or death must be filed with and are determined by the Industrial Commission of Ohio which has exclusive jurisdiction subject only to appeal to the Common Pleas Court of Ohio and Ohio appellate courts. No other courts have jurisdiction, not even federal courts.

*Id.* at 1110. This holding was explained, later in the Court's Opinion, as follows:

> As an appellate court, in diversity cases, we exercise appellate jurisdiction, but we do not hear appeals in worker's compensation claims except in appeals from district courts in Tennessee, where jurisdiction is expressly provided by Tennessee legislation. No such jurisdiction has been provided for Bankruptcy Courts and we are not aware that any Bankruptcy Court in all the long years of existence of the old Bankruptcy Act of 1898 attempted to exercise jurisdiction over the administration of workers' compensation laws. The purpose of Chapter Eleven proceedings is to give the debtor a breathing spell so that it can adjust and compromise its debts. It is submitted that Congress, in enacting Chapter Eleven, never intended that the proceedings be used to disrupt the orderly administration of the worker's compensation laws by the state. Furthermore, in diversity cases, federal courts even decline to exercise jurisdiction in the field of domestic relations and administration of trusts and estates peculiarly suited to state regulatory control and unsuited to control by federal courts. It is clear to us that the Bank-

ruptcy Court has no jurisdiction to pass upon the validity of workers' claims for injury, occupational disease, or death as the exclusive jurisdiction is vested in the Industrial Commission and the Ohio courts.

*Id.* at 1113–14.

In light of this language, which very strongly suggests that a bankruptcy court should decline to exercise jurisdiction in all matters related to the adjudication of a debtor's workers' compensation claim, it is this Court's position that it must decline jurisdiction over the issue of whether the Debtor was Mr. Rader's "employer," notwithstanding the potential merits of the Debtor's arguments. Accordingly, pursuant to *In re Mansfield Tire & Rubber Co.,* the Debtor will not be permitted, with respect to his complaint to determine dischargeability, to litigate the issue as to whether he and Mr. Rader were acting within the scope of an employer-employee relationship at the time Mr. Rader was injured. In making this determination, it is observed that for the Court to now involve itself in issues concerning the Debtor's status as an "employer" would raise many of the same concerns enumerated by the Sixth Circuit in *In re Mansfield Tire & Rubber Co.* This is true notwithstanding that *In re Mansfield Tire & Rubber Co.* was filed under Chapter 11 of the United States Bankruptcy Code. For example, to rule on the Debtor's status as an "employer" would surely constitute an involvement in the administrative process of Ohio Workers' Compensation law, as was admonished against in *In re Mansfield Tire & Rubber Co.* Similarly, in both this proceeding and in the *In re Mansfield Tire & Rubber Co.* case, no benefit would befall the debtors' bankruptcy estate if it were to be determined that the exercise of jurisdiction over the underlying workers' compensation claim was proper. The Court's decision to decline jurisdiction also has the practical effect of

keeping the determination of workers' compensation claims within the province of the state court system, which is unquestionably better set up to handle such claims. To put it differently, and in the words of the Court in *In re Mansfield Tire & Rubber Co.*, claims for workers' compensation are "peculiarly suited to state regulatory control and unsuited to control by federal courts." *Id.* at 1114. One final note, however: The Court's holding herein to decline jurisdiction over the Debtor's status as an "employer" should in no way be construed to mean that the Debtor is now precluded from maintaining his cause of action in this adversary proceeding.

In reaching the conclusions found herein, the Court has considered all of the evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically referred to in this Decision.

Accordingly, it is

**ORDERED** that this matter be, and is hereby, set for a further Pre–Trial on Thursday, March 22, 2001, at 2:00 P.M., in Courtroom No. 1, Room 119, United States Courthouse, 1716 Spielbusch Avenue, Toledo, Ohio.